### In re HIGGINS et al.

(Circuit Court of Appeals, Second Circuit. April 18, 1893.)

1. CUSTOMS DUTIES—"SORTED" WOOLS—SEPARATION INTO COLORS.

The importation of wool separated as to colors by entire fleeces, the colors being of different values, and entered for duty as washed wool of the third class, is not within paragraph 383 of the tariff act of 1890, which imposes double duties upon wool "which shall be imported in any other than ordinary condition, or which shall be changed in its character or condition for the purpose of evading the duty, * * * or which has been sorted or increased in value by the rejection of any part of the original fleece." 50 Fed. Rep. 910, affirmed.

2. SAME—EXCEPTION FROM "DOUBLE DUTY"—CONSTRUCTION OF ACT.

The proviso excepting "wools on which duty is assessed amounting to three times or more than that which would be assessed if said wool was imported unwashed" from the double duty imposed by paragraph 383 of the tariff act of 1890 on wools sorted in quality for the purpose of evading duty, cannot be restricted to those classes of wool upon which the act assesses duty by the express term "unwashed." 50 Fed. Rep. 910, affirmed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

E. S. Higgins & Co. protested against an assessment of washed wools by the collector of the port of New York, and the board of appraisers sustained the protest. The collector appealed to the circuit court, which sustained the decision of the board, (50 Fed. Rep. 911,) and the collector appeals. Affirmed.

Thos. Greenwood, Asst. U. S. Atty., for appellant.

W. Wickham Smith, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The tariff act of October, 1890, (26 St. U. S. p. 594,) divides wool for duty purposes into three classes. The firm of E. S. Higgins & Co., on April 2, 1891, made entry of an invoice of washed wool of the third class; some of it being gray, some yellow, and the rest white. The value of the gray and of the yellow was less than 13 cents per pound, of the white in excess of 13 cents per pound. The tariff act contains the following paragraphs:

"385. On wools of the third class, and on camel's hair of the third class, the value whereof shall be thirteen cents or less per pound, including charges, the duty shall be thirty-two per centum ad valorem.

"386. On wools of the third class, and on camel's hair of the third class, the value whereof shall exceed thirteen cents per pound, including charges, the duty shall be fifty per cent. ad valorem."

The importers contended that their importations were dutiable, the gray and yellow at 32 per cent., the white at 50 per cent. The collector exacted 64 per cent. and 100 per cent., respectively, against which the importers duly protested, and the board of appraisers sustained their claim. The collector exacted the additional duty under the supposed authority of paragraph 383:

"The duty upon wool of the sheep, or hair of the camel, goat, alpaca, and other like animals, which shall be imported in any other than ordinary condition, or which shall be changed in its character or condition for the purpose of evading the duty, or which shall be reduced in value by the admixture of dirt or any other foreign substance, or which has been sorted or increased in value by the rejection of any part of the original fleece, shall be twice the duty to which it would be otherwise subject: provided, that skirted wools, as now imported, are hereby excepted. Wools on which a duty is assessed amounting to three times or more than that which would be assessed if said wool was imported unwashed, such duty shall not be doubled on account of its being sorted."

The board of general appraisers found as facts that the gray and yellow wool was worth less than 13 cents per pound; that it had not been changed in its character or condition for the purpose of evading the duty, nor reduced in value by the admixture of dirt or any other foreign substance; that there had been a separation as to color, (according to a common practice of long standing in the case of East India wools,) which had depreciated the gray and yellow below the average value of the lot before such separation, but that there had been no separation as to quality of these wools. So far as the evidence shows, the separation was in whole fleeces, and none of the wool was "skirted,"—a process which consists in the

removal of the stained and inferior locks taken from the belly or legs, and sometimes from the neck.

Upon the argument we expressed the opinion that the board of appraisers and the circuit court were correct in their conclusion that the gray and yellow wool was not "sorted," within the meaning of paragraph 383. This word is aptly defined in the return of the board of general appraisers:

"'Sorting,' as usually defined, means that process preliminary to wool manufacturing necessary to fit the article for textile purposes, which consists in classifying by separation the fibers of the fleece as clipped from the sheep's body 'according to length, fineness, elasticity, and soundness of staple.' The wool varies in quality in different parts of the animal, as many as twelve or fourteen 'sorts' being sometimes obtained from a single fleece, but frequently not more than from five to seven qualities."

This definition is sustained by expert evidence before the board, and by technical works on manufactures, which they cite. It is in accord with the definition contained in the report on wool and manufactures of wool, published by the treasury department September 6, 1889, and which was presumably known to the framers of the tariff act of 1890. The word is therein thus defined: "'Sorts:' The fleeces, broken into narrower and more accurate subdivisions as to fineness; there being several qualities or sorts of wool in the same fleece." The phrase, "which has been sorted or increased in value by the rejection of any part of the original fleece," in paragraph 383 is coupled with the phrases, "imported in any other than ordinary conditions," "changed in its character or condition for the purpose of evading the duty," and "reduced in value by the admixture of dirt or other foreign substance;" and the provisions for payment of double duty is in the nature of a penalty. In view of the fact that East India wool of this class, as the evidence shows, has always been packed abroad, separated as to color, and so imported, and of the further fact that, before the act of 1890 was passed, complaint had been made by the wool growers of this country of a practice that had grown up of taking third-class wool, separating the very finest parts of the fleece, bringing them over here, and getting them through the customhouse as carpet wool, and then using them for the purpose of making clothing, there is additional warrant for the conclusion that congress used the phrase "sorted wool" with the meaning understood by wool dealers, viz. a breaking up of the fleeces to obtain a subdivision into grades, and not a mere separation by whole fleeces into colors, each fleece still containing the separate sorts of wool of which it was composed when sheared from the sheep's back.

There was no warrant, therefore, for classifying the gray and yellow wools here imported as "sorted," and therefore the double duty upon them was improperly exacted.

It is conceded that the white wool was not only separated by color, but also sorted in quality. As such, it would be liable to the double duty imposed by paragraph 383, except for the proviso which excepts "wools on which a duty is assessed amounting to three times or more than that which would be assessed if said wool was im-

ported unwashed." The board of appraisers found as a fact that the duty already assessed at 50 per cent. ad valorem on the white wool amounted to more than three times the amount to which it would have been subject if imported unwashed. We find nothing in the record to call for a review of this finding of fact, and, it being a fact, there was no warrant for the imposition of the double duty. In the argument ab inconvenienti advanced by the district attorney we do not find sufficient ground for restricting the proviso to those classes of wools (first and second class) upon which the statute assesses duty by the express term "unwashed." If third-class unwashed wool were imported, it would pay a duty easily ascertainable by multiplying the valuation by the ad valorem rate. When the statute also provides that, if the duty on the same wool washed is three times what it would be were the wool unwashed, there shall be no doubling on account of its being sorted, the language is plain and comprehensive of all wools, and there is no reason why it should be construed to have a different meaning from that which is expressed upon its face simply because it may not be convenient to ascertain the value of unwashed wool of the same class and grade as washed wool. The board of appraisers did not find the task impossible, and presumably the collector would have found it no more difficult. Arthur v. Pastor, 109 U. S. 139, 3 Sup. Ct. Rep. 96. The decision of the circuit court is affirmed.