STANDARD VARNISH WORKS v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 12, 1894.)

No. 41.

1. CUSTOMS DUTIES—CLASSIFICATION—CANDLE TAR.
   Candle tar, a residuum or by-product in· the manufacture of candles, is ·a manufactured article, and dutiable as such under section 4 of the act of October 1, 1890, and not as waste, under paragraph 472. 53 Fed. 786, affirmed.

2. SAME—"WASTE."
   Definition of "waste" in tariff acts.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Application by the Standard Varnish Works for review of a decision of the board of general appraisers affirming the classification by the collector of the port of New York of certain merchandise imported by them. The circuit court affirmed the decision of the board of general appraisers. 53 Fed. 786. The importers appeal. Affirmed.

W. Wickham Smith, for appellant.

Edward Mitchell, U. S. Atty., and Henry C. Platt, Asst. U. S. Atty.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The board of general appraisers found that the merchandise in question is commercially known by various names, such as candle tar, candle pitch, palm pitch, and candle residuum; that it is produced from tallow, animal grease, and palm oil, by subjecting the same to treatment with superheated steam in closed boilers or retorts, whereby the stearine and the candle tar or pitch are separated, the stearine being carried out of the retort by distillation, and the candle tar or pitch remaining in the boiler or retort; that this candle tar or pitch is a product used in the arts for waterproofing barrels, waterproofing coverings for roofs, and also for increasing the body of varnishes. There is abundant evidence to support these findings of fact. The board affirmed the decision of ·the collector, who classified the merchandise for duty as a nonenumerated manufactured article not specially provided for, at 20 per cent. ad valorem. The importer contends that it should ·be classified either at 10 per cent. ad valorem, under paragraph 472, ("Waste, not specially enumerated or provided for,") or as a nonenumerated, unmanufactured article, under section 4 of the same act; (tariff of 1890.)

The merchandise cannot fairly be classified as an unmanufactured article. It is not in itself a raw material; it is not found in nature; and, although something left over in the manufacture of candles, it is no longer either the tallow, or the animal grease, or the palm oil which were subjected to a manufacturing process in order to obtain the stearine for candles. It has been transformed by that very process. It has become something different from what it was

before, in character, in substance, in name, and use.     In this respect it differs from the small cubes of marble broken off from the original block in the process of manufacturing slabs of marble, which began as marble and ended as marble, changed in shape, in adaptability for use, perhaps in name, but still the same in character and substance, which were held by this court not to be manufactures of marble in Re Herter Bros., 4 C. C. A. 107, 53 Fed. 913.     This substance, as the expert testimony clearly shows, is chemically a new body, a new creation, entirely distinct from what existed before; and, as it has become such by a process of manufacture, it is a manufactured article.

The process of distillation to which the tallow, grease, or oil is subjected is apparently not undertaken with the intention thereby to obtain this new article.     What is sought for is the glycerine and fatty acid to be made into candles, but, owing to the imperfection of the process,—the increase of temperature causing burning,—after the glycerine and fatty acid are drawn off, this pitch-like residue remains.     The process has thus resulted in three new products, neither of which existed as a separate body before.     For the reason that this so-called residuum was not sought for, the manufacturer endeavoring to produce as little of it as possible, the importer contends that it is "waste," within the meaning of the tariff act.     There is no evidence as to the commercial meaning of "waste."     Congress evidently did not use the word as meaning "that which is of no value; worthless remnant; refuse,"—the primary definition given in Webster's Dictionary,—since it imposed upon it an ad valorem duty. The Century Dictionary defines "waste" as "broken, spoiled, useless, or superfluous material; stuff that is left over, or that is unfitted, or cannot readily be utilized for the purpose for which it was intended; overplus; useless or rejected material."     This definition exactly fits spoiled, superfluous, or rejected material, which is of the same kind as the material utilized for the intended purpose. Whether it covers also a by-product of manufacture such as this, which is chemically a different substance from the material subjected to the process, and which can itself be put to use in the arts, is not so clear.     Congress, however, has used the word elsewhere in the tariff.     Paragraph 134 lays a duty on "wrought and cast scrap iron and scrap steel," with a proviso that "nothing shall be deemed scrap iron or scrap steel, except waste or refuse iron or steel fit only to be remanufactured."     In that case iron or steel being used to produce some manufacture of iron or steel, the refuse or material left over is still iron or steel.     Again, paragraph 388 provides for "slubbing waste, roving waste, ring waste, yarn waste, garnetted waste and all other wastes composed wholly or in part of wool."     Definitions of some of these terms are found in the special report to the treasury department, published in 1888, and referred to in the decision of this court in Re Higgins, 5 C. C. A. 104, 55 Fed. 278.     Ring waste is "a highly purified article of scoured wool, and is made from wool tops or combed wool; and the couronnes, when not made for export, is the tangled slubbing, or wool top, that through accident becomes disarranged in the process of spinning it into yarn."     "Garnetted waste is the prod-

act of a garnett machine, which tears and ravels out the twist in thread, thus reducing it back to the original purified wool by reason of taking out the twist which is originally given to the wool to make it yarn or thread." "In the process of spinning yarn, wool tops are sometimes called 'slubbing' or 'roving,' in a process midway between wool tops and yarn." It is plain that in all these cases the waste is still wool. Again, paragraph 670 provides for waste rope and waste bagging; but, although unfitted for the purpose for which bagging or rope is intended, the waste is no new creation; it is the same substance as the bagging or the rope which is used for the intended purpose. The cotton waste of paragraph 549, and the silk waste of paragraph 705, are still respectively cotton and silk.

The merchandise in this case is a residuum in the manufacture of candles, as crude coal tar is a residuum in the manufacture of gas. Each is one of the results of a destructive distillation of the original substances,—grease, oil, or tallow in the one case; tar in the other. In fact it appears that at one time free entry was claimed for this candle residuum by reason of the similitude to crude coal tar. But congress evidently did not suppose that crude coal tar was waste, since, in the tariff of 1883, which contained a provision (paragraph 493) similar to that in the tariff of 1890 for waste at 10 per cent. ad valorem, it expressly provided by another paragraph (paragraph 80) for precisely the same duty on "coal tar, crude." We are of opinion, therefore, that the term "waste," as used in the tariff, does not cover the merchandise in suit.

Decision of circuit court affirmed.