UNITED STATES v. DEAN LINSEED-OIL CO.

(Circuit Court of Appeals, Second Circuit. April 7, 1898.)

No. 57.

1. CUSTOMS—DRAWBACK—LINSEED-OIL CAKE.
Where linseed, on which a duty of 20 cents per bushel had been paid, was manufactured into oil and oil cake, and the oil cake exported, the drawback, under section 22 of the act of August 27, 1894, should be computed in proportion to the value which the oil cake bears to the oil, and not in proportion to the weight which the exported oil cake bears to the weight of the imported linseed. 78 Fed. 467, reversed.

2. SAME—MANUFACTURE—WASTE.

    Linseed-oil cake, manufactured from imported linseed, is not waste, but is a manufactured article, and was therefore entitled to the drawback provided by section 22 of the act of August 27, 1894 (28 Stat. 551).

    Wallace, Circuit Judge, dissenting.

## In Error to the Circuit Court of the United States for the Eastern District of New York.

This is a writ of error to review a judgment of the circuit court for the Eastern district of New York in an action against the United States, which was brought under the provisions of section 3 of the act of March 3, 1887 (24 Stat. 505), known as the "Tucker Act." The material facts found by the circuit court are as follows: In December, 1894, the Dean Linseed-Oil Company, the petitioner, imported into the United States 11,944 bushels of linseed, or flaxseed, of 56 pounds each, and in that month, and in January, 1895, 23,704 other bushels of linseed, of 56 pounds per bushel, were imported into the United States, partly by the petitioner and partly by other persons, who transferred and delivered the same to the petitioner; and upon these importations the statutory duty of 20 cents per bushel was duly paid. Thereafter the petitioner, which is a corporation for the manufacture of products from linseed, manufactured said linseed into oil, and the by-product known as "oil cake," by the following process: The seed was crushed by being passed through iron rollers. The crushed seed was conveyed to a machine called a "mulling machine." In that machine, heated steam was introduced, and the pressed seed was subjected to the mulling process; that is, it was constantly stirred by revolving wheels. The process was continued until the crushed seed was softened and heated and moistened to a certain extent. It was then placed in screens of duck cloth; one screen being placed above the other, and duck cloths over each screen when filled. These screens were fitted into an hydraulic press, and the arrangement was such that by means of the hydraulic press the oil was pressed, and ran out into troughs or vessels, and was thence conveyed to tanks, where it was allowed to settle. What remained in the press was the oil cake, one cake being the result of the pressure of each of these screens to the form. The edges of the cake were trimmed. It was then piled or corded so that it might dry out, and it was then placed in bags, which were properly marked, and it was then ready to be used. The oil product, after settling, was barreled, and was ready for use. Of the matter composing each bushel of seed, weighing 56 pounds, 35.87 pounds appeared in the cake, and 19.91 pounds appeared in the oil. The treasury regulations of March 29, 1895, state (and the accuracy of the statement seems to be conceded) that the average value of imported oil seed is $1.62 per bushel of 56 pounds, and that from a bushel of linseed 2.654 gallons of oil are obtained. The value of the oil cake exported by the petitioners was about $21 per ton of 2,000 pounds, and the value of the linseed oil extracted from the imported seed was 52 cents per gallon. From a bushel of linseed, 35.87 pounds of oil cake are obtained. Thereafter the petitioner exported to England the cake made from said different importations, and presented to the collector of customs at New York a claim or claims for the drawback alleged to be allowed by law on the cake so exported. All the requirements imposed either by the statute or by the regulations of the secretary of the treasury were complied with. Section 22 of the tariff act of August 27, 1894 (28 Stat. 551), provides as follows: "Where imported material on which duties have been paid are used in the manufacture of articles manufactured or produced in the United States, there shall be allowed on the exportation of such articles a drawback equal in amount to the duties paid on the materials used, less one per centum of such duties." A similar section first appeared in section 4 of the act of August 5, 1861 (12 Stat. 293), and was section 3019 of the Revised Statutes, and was contained in the tariff act of 1890; but in the tariff act of July 14, 1870 (16 Stat. 263), it was provided, in the paragraph imposing a duty upon linseed, that no drawback should be allowed on oil cake made from imported seed, and this proviso was continued in the paragraph of each tariff act which imposed a duty upon linseed, until the act of 1894, in which it was omitted. The circuit court found that the number of articles affected by the construction of the law allowing drawbacks, where sev-

eral articles are manufactured from one imported material, is very great; that among them are castor oil and castor pomace, tin plate, locomotives, glass, wire, refined sugar, and syrup which comes from imported raw sugar and refined sugar, and syrup which comes from imported molasses, articles manufactured from tin plate, and articles manufactured from wool, and cleaned rice manufactured from uncleaned rice, and bags made from imported material. From August 5. 1861, down to the present time, the practice of the treasury department, where several articles were manufactured from the same imported material, has always been to calculate and to pay the drawback by distributing the duty paid on the imported material between such articles in proportion to their values, and not in proportion to their weights, as well where the imported material paid a specific as where it paid an ad valorem duty. Such calculation and payment have been under treasury regulations. This question was established after investigation, in 1861, into the values of the various products of raw sugar, of linseed, and of other imported articles. After the provision of the act of 1894, by which a drawback upon oil cake was no longer prohibited, the treasury department issued a regulation, dated March 29, 1895, which instructed collectors to act in accordance with the general practice, and, taking the portion of the imported seed resulting in the oil cake at 35.87 pounds per bushel, and first ascertaining the value of such cake, to calculate the drawback as being such proportion (less 1 per cent.) of the duty paid on the seed as the value of the oil cake was to the value of the oil and oil cake. The collector estimated, in accordance with these instructions, the amount of drawback which was due to the petitioner, and found the aggregate to be $1,498.46, and tendered to the petitioner debenture certificates for that amount, which it did not accept. If the drawback should be computed in proportion to weights, the aggregate upon the oil cake would be $4,521.07. The petition was brought to recover that sum, and judgment was rendered in its favor for that amount.

James Byrne and Robert H. Roy, for the United States.

S. B. Clarke and Elihu Root, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge (after stating the facts as above). The immediate question in this case is, shall the total drawback, less the 1 per cent. retained by the government, be divided between the oil and the oil cake in proportion to their weight or their value? Inasmuch as the duty is imposed by weight, the petitioner contends that the drawback shall be divided by weight. The decision depends upon the construction which shall be given to a general statute which has a very large class of articles within its scope, and therefore is an important statute both to the manufacturer and to the government. When an imported material, upon which duties have been paid, is manufactured into two separate products, the statute is silent as to the proportion in which the drawback shall be divided among the respective products. A court, therefore, is permitted to adopt the construction of the statute or the method of division which shall seem to it the most reasonable and just, and therefore the one most in accordance with the probable intention of the legislation. It will be seen, by a glance at the list of articles heretofore given which are affected by the statute in regard to drawback, that, from many imported articles upon which duties are paid by weight, two or more products of different values are manufactured, and that the principal product, and the one of chief value, is often light in weight, while the secondary or by-product is bulky, but cheap. This is noticeable in the products from the castor bean, from sugar, and from tin plate. From a

bushel of linseed, 2.6 gallons of oil are produced, which used 19.91 pounds of the bushel, and are worth at least $1.36, while 35.87 pounds appeared in the by-product of cake, which is worth a fraction over 1 cent per pound. If the duty of 20 cents per bushel is divided according to weight, each pound will pay $5/14$ of a cent, and the cheap and bulky secondary product will receive a drawback far disproportionate to its value. This seems unreasonable, and there is also a lack of equity towards the government, in compelling it to return a drawback by the pound upon an article which sells at $21 by the ton. The purpose of the drawback provision is to make "duty free imports which are manufactured here and then returned" to some foreign country. Campbell v. U. S., 107 U. S. 407, 2 Sup. Ct. 759. The manufacturer from imported seed, who sells his linseed oil in this country, and exports his oil cake, if he receives his drawback on the oil cake by weight, receives an unreasonably large amount of return duty, as between the oil which he sells in this country and the oil cake which he exports. He keeps in this country the valuable part of his imported article, he returns the nonvaluable part, and receives about $13/20$ of the duty. The same lack of equity would show itself in the case of each by-product throughout the list of manufactured articles which are entitled to be a drawback. The uniform practice of the treasury department, since 1861, has been, where several articles were manufactured from the same imported material, to pay the drawback by distributing the duty paid between the manufactured articles in proportion to their values, whether the original duty was specific or ad valorem. It is true that the drawback on oil cake did not exist between 1870 and 1894, but the general statute existed, and was applicable to a large number of manufactured articles. The importance of adherence to a long-continued and reasonable construction of a statute by the officers of the department whose duty it has been to execute it, when the statute is of an ambiguous character, has been frequently commented upon by the supreme court ever since the case of Edwards v. Darby, 12 Wheat. 206, in which the court said:

"In the construction of a doubtful and ambiguous law, the contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect."

The uniform construction of the treasury department seems to us reasonable, and equitable to the importer and the government.

The government makes the point that the petitioner is not entitled to any drawback, because oil cake is not a manufactured article, but is waste. The supreme court, in Campbell v. U. S., supra, which was an action to recover drawback upon linseed-oil cake, proceeded in their opinion upon the undisputed theory that it was a manufactured article; and it has been recognized as such by the treasury department from 1861, whenever it was not withdrawn by legislation from the statute in regard to the drawback. The article is a different thing from the tobacco scraps or tobacco clippings, which in Seeberger v. Castro, 153 U. S. 32, 14 Sup. Ct. 766, were held not to be a manufactured article; not being fit for

use in the condition in which they were imported, except for a new manufacture. The petitioner is therefore entitled to the amount found due by the collector, viz. $1,498.46. The judgment of the circuit court is reversed, and the case is remanded to that court, with instructions to enter a new judgment for the petitioner in accordance with this opinion, and for the costs permitted by the act of March 3, 1887.

(April 20, 1898.)

WALLACE, Circuit Judge (dissenting). I am unable to concur in the judgment in this cause.

Imported materials, viz. "linseed," were used in the production here of two manufactured articles, viz. linseed oil and oil cake. The plaintiff, upon exporting the oil cake produced from a given number of pounds of the imported linseed, was entitled to a drawback, under the provisions of section 22 of the act of congress of August 27, 1894, which provides as follows:

"Where imported materials, on which duties have been paid, are used in the manufacture of articles manufactured or produced in the United States, there shall be allowed on the exportation of such articles a drawback equal in amount to the duties paid on the materials used, less one per centum of such duties."

Upon the linseed used in the oil cake the plaintiff had paid a duty of 20 per cent. for every 56 pounds, amounting to $4,521.09. According to the judgment of the court, the plaintiff is entitled to a drawback of only about 6 per cent. for every 56 pounds, amounting to $1,498.46, upon the theory that it is to be allowed, not upon the number of pounds of the linseed used in the oil cake, but pursuant to a mathematical formula adopted by the treasury department. The statute gives no sanction for such a mode of computing the drawback. The only inquiry which it permits is as to the quantity of the imported material in the exported article and the duty originally paid thereon. The mathematical formula which has been applied cannot possibly lead to a result which satisfies the statute.

It is true that between 1861 and 1870, while a similar statute was in force, it was the usage of the officers of the treasury department to compute the drawback according to this formula, but the case is not one for the application of the rule that where a statute is ambiguous the practical interpretation given by the executive officers charged with its administration is entitled to great weight. The statute is not ambiguous, but is as plain as language can make it.

In my opinion the judgment of the court below was correct, and should be affirmed.