UNITED STATES v. SCHROEDER et al.

(Circuit Court of Appeals, Second Circuit. March 1, 1899.)

No. 58.

CUSTOMS DUTIES—TOBACCO.
Tariff Act Oct. 1, 1890 (26 Stat. 567), having no provision for "tobacco, unmanufactured, not specially enumerated or provided for," the portions of leaf tobacco which break off in handling the tobacco before it is stemmed, or in the process of shipping, and are swept up, and are and can be used only for cigarettes and the fillers of the cheaper grades of cigars, and are not covered by any of the paragraphs of the tobacco schedule, may fairly be classified under paragraph 472 as waste.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decision of the circuit court, Southern district of New York, reversing a decision of the board of general appraisers which sustained a decision of the collector of the port of New York classifying a certain importation of tobacco for customs duty. 87 Fed. 201. The importation consists of those portions of the leaf tobacco which break off in handling the tobacco before it is stemmed, or in the process of stripping.

Henry C. Platt, for appellant.
Wm. B. Hill, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The local appraiser who examined the importation reported it "as assimilating to, and as a matter of fact being, a filler tobacco"; and the collector assessed duty thereon under paragraph 243 of the act of October 1, 1890. 26 Stat. 567. The first paragraph in the tobacco schedule (242) provides for "leaf tobacco, suitable for cigar wrappers." No one contends that the importation is within the provisions of that paragraph. Paragraph 243 reads as follows: "(243) All other tobacco in leaf, unmanufactured and not stemmed, thirty-five cents per pound; if stemmed, fifty cents per pound." Paragraph 244 reads: "(244) Tobacco, manufactured, of all descriptions, not specially enumerated or provided for in this act, forty cents per pound." The remaining paragraphs of the schedule are 245, covering snuff of all descriptions, and 246, covering cigars, cigarettes, and cheroots. Comparing this schedule with the tobacco schedule in the next preceding tariff act (Acts 1883, c. 121, 22 Stat. 502) it appears that congress has omitted a provision for "tobacco, unmanufactured, not specially enumerated or provided for," which would seem to cover the merchandise in question. This provision of the earlier act being omitted, the question to be determined is, under which one of the provisions of the act of 1890 is this scrap filler tobacco to be classified?

It may well be that, as found by the local appraiser, it bears a sufficient similitude to the leaf tobacco of paragraph 243 to warrant its classification thereunder; but the section of the tariff act

directing classification according to similitude applies only to non-enumerated articles. The board of general appraisers affirmed the decision of the collector, stating in its opinion that such action was in accordance with a decision of the circuit court of appeals, Seventh circuit (Sheldon v. U. S., 5 C. C. A. 282, 55 Fed. 818). In the case cited, however, the collector had classified the importation not as "tobacco in leaf, unmanufactured" (paragraph 243), but as "tobacco, manufactured of all descriptions not specially enumerated," etc., under paragraph 244. The court sustained this classification. The Sheldon Case, therefore, is no authority for the proposition that an article such as this is to be classified as "all other tobacco in leaf, unmanufactured" (paragraph 243); nor, indeed, is it authority even for the classification it sustained. The supreme court had occasion, in a later decision (Seeberger v. Castro, 153 U. S. 32, 14 Sup. Ct. 766), which cited the Sheldon Case, to consider the question whether such tobacco is "manufactured," in the sense of the word as used in the tariff act. The particular act then under consideration was the tariff of 1883, but the language of the paragraph (249) is the same,—"tobacco manufactured, of all descriptions, not specially enumerated," etc. The tobacco before the supreme court was "scraps, * * * clippings from the ends of cigars, and pieces broken from the tobacco of which cigars are manufactured, in the process of such manufacture, and not fit for any use in the condition in which the same are imported, and that their only use is to be manufactured into cigarettes and smoking tobacco." The court held that such "clippings are the mere waste resulting from a process of manufacture, and not in themselves manufactured articles." It did not classify these scraps for duty under paragraph 493 of the act of 1883, as "waste, all not specially enumerated"; finding a much more specific provision in the tobacco schedule, viz. "tobacco, unmanufactured, not specially enumerated," etc.,—a provision, be it noted, which is not found in the act of 1890 now under consideration. Manifestly the present importation cannot be classified as "tobacco manufactured," and, indeed, neither the collector nor the importer contends that it should be so classified.

The importer contends that the tobacco is dutiable under paragraph 472: "Waste, not specially provided for in this act ten per centum ad valorem." The following summary of the evidence, which was entirely uncontradicted,—the government calling no witness,—indicates the characteristics of the importation in controversy: The clippings and cuttings of cigars are known to the trade as "clippings." "Scrap tobacco," however (the trade-name of the article here imported), constitutes a class of its own; coming to this country in bales of a peculiar size, differing from those of wrapper or filler tobacco. It is the part that falls when stripping the tobacco to prepare the leaf to go into the cigar. In the process of manufacturing cigars, they take tobacco in the leaf, put it first on racks to dry, then in barrels to sweat, and then put it on the cigar maker's table. In all this handling,—racking, barreling, taking out and putting on the table,—there is always more or less breakage of the tobacco leaf; and the particles which fall in handling, and those which

93 F.—29

are broken from the leaf in the process of stemming, make this scrap tobacco. They drop to the floor, and are swept up. It is worth about one-quarter the value of the tobacco leaf from which it comes. The breaking is not intentional. In the rough handling of the leaf in tearing off the stem,. pieces fall to the floor, which the workman does not stop to pick up, but which are subsequently collected from the floor as scraps. It is principally used for cigarettes and the cheaper grades of cigars,—the cheaper grade of a Havana filler cigar,—and can only be used for fillers. The term "leaf tobacco," in the trade, is applied to anything that is on the stem, or in its original form with the stem taken out. These "filler scraps" seem not to be within the ordinary meaning of the phrase "tobacco in leaf," and there is nothing to indicate that trade usage so classifies them. They are therefore not covered by any of the paragraphs of the tobacco schedule, but may fairly be classified as waste,—spoiled, superfluous, or rejected material, which is of the same kind as the material utilized for the intended purpose. Standard Varnish Works v. U. S., 8 C. C. A. 178, 59 Fed. 456; U. S. v. Dean Linseed Oil Co., 31 C. C. A. 51, 87 Fed. 453. The decision of the circuit court is affirmed.