CONSOLIDATED COLOR & CHEMICAL CO. *v.* UNITED STATES (No. 240).[1]

TETRACHLORIDE OF TIN—LAC SPIRITS.

Tetrachloride of tin, while admittedly a chemical compound, was not dutiable as such under tariff act of 1897, and being, as appears from a preponderance of the testimony in this case, lac spirits, it was, as such, free of duty under that act

United States Court of Customs Appeals, October 12, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7016 (T. D. 30584).

[Reversed.]

*Curie, Smith & Maxwell* (*W. Wickham Smith* and *Thomas M. Lane* of counsel) for the appellants.

*D. Frank Lloyd*, Assistant Attorney General (*Charles D. Lawrence* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

The collector of customs at the port of New York classified an importation of tetrachloride of tin as a chemical compound and assessed it for duty at 25 per cent ad valorem under the provisions of paragraph 3 of the tariff act of July 24, 1897, which is as follows:

3. Alkalies, alkaloids, distilled oils, essential oils, expressed oils, rendered oils, and all combinations of the foregoing, and all chemical compounds and salts not specially provided for in this act, twenty-five per centum ad valorem.

The Consolidated Color & Chemical Co., which imported the merchandise, protested that the importation was one of lac spirits and therefore free of duty under paragraph 593 of the free list, which reads as follows:

*Free list.*—SEC. 2. That on and after the passage of this act, unless otherwise specially provided for in this act, the following articles when imported shall be exempt from duty:

*       *       *       *       *       *       *

593. Lac spirits.

The Board of General Appraisers overruled the protest and the importers appealed.

The importation is a tetrachloride of tin and is admittedly a chemical compound, but it is claimed to be a special class of chemical compound known as lac spirits, specifically provided for under that name,

[1 Reported in T. D. 31944 (21 Treas. Dec., 367).

and entitled to free entry by virtue of the paragraph of the free list above cited. Whether the importation is lac spirits within the meaning of paragraph 593 is therefore the sole question to be determined. On this point four witnesses testified on the part of the appellant, three of them practical chemists of long experience and all four of them engaged in the business of manufacturing colors and dyes for periods of time running from 11 years to 25 years. The three chemists, . Schweitzer, Clarkson, and Hirschberg, testified positively and directly that they were familiar with and had actually used a material known as lac spirits in the dyeing of textiles. Schweitzer became acquainted with it as early as 1880, and although he never sold the article he bought and actually applied it as a dyer in the years 1888 and 1889. Besides all that, Schweitzer stated that he himself had made lac spirits and used the product for dyeing experiments. Clarkson knew that there was such a material as lac spirits in 1887 and declared that the Quaker City Dye Works Co., with which he was connected as chemist, manufactured it to his knowledge for the purpose of dyeing scarlets for four and one-half years prior to 1897. To Hirschberg lac spirits became known about the year 1900 while he was in England.

From the testimony of the chemists just named it further appears that lac spirits were at one time extensively used as a mordant in dyeing with cochineal and lac dye and also as a weighting material in the dyeing of silks; that with the coming in of the coal-tar colors lac and cochineal dyes were driven out to a large degree, but that lac spirits are and must be still employed whenever lac and cochineal scarlets are used in dyeing; that the importation is a tetrachloride of tin and is manufactured by dissolving tin in hydrochloric or muriatic acid in the presence of nitric acid or by treating stannous chloride with nitric acid or latterly by the cheaper process of submitting tin directly to the action of chlorine gas; that lac spirits is tetrachloride of tin and, as known to three of the witnesses, was made generally by one of the two first methods; that lac spirits and the importation are both stannic chlorides, are both liquids, and are both represented by the same chemical formula $SnCl_4$; that lac spirits and the importation are used for the same purpose, namely, as a mordant for lac and cochineal dyes; that the only difference between them is that one is diluted with water and the other is not; that the tetrachloride of tin in controversy is really highly concentrated lac spirits and is imported in that form to save freight, but that it can not be used by the dyer in its concentrated state and must be diluted with water to protect from injury the textiles to be dyed; that stannous chloride of tin is not a tetrachloride of tin and is represented by a different formula, to wit, $SnCl_2$.

The chemists and the witness Allen, testifying for the importers, agreed that the stannous chloride can not be used for dyeing with lac

or cochineal because it produces too dull a shade.    Allen says, however, that although worthless for lac or cochineal dyes, it may be and is used for making eosine lakes and coal-tar colors.    As against this evidence submitted by the appellant the Government offered the testimony of three witnesses, one of them a manufacturer of chemicals, inclusive of tetrachloride of tin, and the other two chemists. These witnesses were all men of long experience in their particular lines, but none of them, so far as shown, had ever been engaged in the business of dyeing or served as a chemist to a textile dyeing establishment.    Admittedly none of them had ever used lac spirits for practical or commercial purposes, and admittedly none of them knew anything at all about the article under that name except what he had read of it in books.    The witness Bower stated that he had consulted Watts's Dictionary, Ure's Dictionary, and Napier's book on dyeing, and that the formulas there given for lac spirits would not produce tetrachloride of tin, but stannous chloride.    That the formula given in Ure's Dictionary for lac spirits was three parts of foaming hydrochloric acid and one part of tin, which formula he followed and secured a stannous and not a stannic salt.    On cross-examination the attention of this witness was called ·to Ernest Spont's Workshop Receipts, and to the fact that the formula therein set out for lac spirits was 3 gallons of muriatic acid and 2 gallons of water, fed with 6 pounds of tin and 1 gallon of nitric acid.    The wit- · ness said he did not agree with this formula because the books which he had consulted did not provide for nitric acid as a chemical component.    He disagreed also with the following formula for lac scarlet set out in the work entitled "Practical Treatise on Dyeing and Calico Printing," by Robert McFarland, of the Scientific American, 1860, to wit: Mix 27 pounds of muriatic acid of the·specific gravity of 1.17 with a pound and a half of *nitric acid* of 1.19; put this mixture in a soft glazed bottle and add to it in small bits at a time tin until 4 pounds are dissolved.    He said that he did not consider lac spirits and lac scarlet spirits as identical.    In this connection it might be well to note that lac spirits is the mordant for lac and cochineal, which are scarlet dyes.

· Ralph W. Bailey stated that he had consulted Neile, Watts's Chemical Dictionary, Cooley's Book of Practical Receipts, and the Encyclopedia Britannica, and that the formula of those books for the making of lac spirits called for the dissolving of tin in hydrochloric acid, which would produce a stannous and not a stannic chloride.· He stated further that he had been unable to find any description of lac spirits the manufacture of which called for the use of nitric acid.

Russell W. Moore, chemist in charge of the appraiser's laboratory at New York, stated that lac spirits is an obsolete term, and that in his investigation of it he found it described in old and obsolete works.

That some authorities described it as produced by dissolving tin in hydrochloric acid and others by treating stannous chloride with *nitric acid,* producing what was then called in the old way nitrate muriate of tin; *that the only difference between nitrate muriate of tin and the importation is that one is an impure dilute article and the other a pure concentrated article; that tetrachloride of tin exists in both and is represented by the same chemical formula;* that the impurities in the dilute article are stannous salts and some nitric and hydrochloric acid in excess; that lac spirits belonged to both stannous and stannic salts in an indeterminate way.

On this state of the evidence the board found, first, that the merchandise imported was tetrachloride of tin, a stannic salt produced by dissolving tin in hydrochloric acid in the presence of nitric acid and used in the textile industries for mordanting, dyeing, and weighting; second, that lac spirits is a solution of tin in hydrochloric acid and therefore a solution of a stannous chloride or stannous salt in water; third, that tetrachloride of tin is neither commercially nor commonly known as lac spirits. To sustain the second finding of the board requires us to disregard the positive, direct, unimpeached testimony of at least three witnesses on the part of the importer who were eminently qualified to testify as to lac spirits and to accept that of witnesses whose sole information on the subject was derived from books, the status of which as standard authorities was not established. This we are not prepared to do, inasmuch as other books entitled to at least as much weight as those referred to by the witnesses for the Government fully sustained the statement of the importer's witnesses that lac spirits were made by dissolving tin in hydrochloric acid *in the presence of nitric acid,* thereby producing, according to the witness Schweitzer, a tetrachloride of tin, which is a stannic and not a stannous salt. If we reject the evidence of both lines of books as conflicting and lacking in probative force, the testimony of importer's witness stands uncontradicted and fully establishes that the importation and lac spirits are both tetrachloride of tin, manufactured from the same materials and in the same way. In analyzing the testimony it should not be forgotten that tin and hydrochloric acid produce a stannous chloride which is not tetrachloride of tin. If we accept one line of authorities we must accept the other, and to reconcile them no course is open except to conclude that the term "lac spirits" covered both the stannous chloride and the stannic chloride, and from that it would follow that *both* chlorides would be entitled to free entry.

As to the third finding of the board, that tetrachloride of tin is neither commercially nor commonly known as lac spirits, it is sufficient to say that whether tetrachloride of tin is now known as lac spirits is beside the question. Whether the article once commercially known as lac spirits is tetrachloride of tin is the point involved.

If, when provision was made for lac spirits on the free list, there was an article commercially known by that name and that article, chemically speaking, was tetrachloride of tin, the fact that it subsequently lost its commercial name and took its chemical and scientific designation would not remove it from the free list or deprive it of the concession made by Congress to the article and not to its name. Beyond debate there was a material which at some time in the history of tariff legislation was either popularly or commercially known as lac spirits. Provision was made for it in the free list of the tariff act of 1890, and the United States General Appraisers, in T. D. 12953, held that the lac spirits there mentioned was a *dyestuff* and not a varnish. Subsequently, when the tariff act of 1897 was passed, lac spirits was continued on the free list, and that action on the part of Congress must be presumed to have been taken in the light of the appraisers' decision that there was an article known as lac spirits and that lac spirits was used for dyeing and not for varnishing. Whether lac spirits was a stannic chloride or a stannous chloride or both was not put in issue in T. D. 12953 and was, therefore, not tried or litigated in that case. What was said by the board in that behalf can not therefore be held to have been presumptively confirmed by a subsequent legislative enactment which repeated the language of the paragraph which was interpreted by the decision. On a protest that lac spirits was a varnish the board classified it as a dyestuff, and as to that classification, and nothing more, the legislature may be presumed to have approved the decision of the board.

Russell Moore, a witness for the Government, testified that lac spirits resulting from the chemical reaction of hydrochloric acid and nitric acid on tin would be an impure tetrachloride of tin as compared with the importation, which, he said, was a pure concentrated article. Admittedly lac spirits are diluted with water and the importation is not. That fact, however, affects only the strength of the article and does not alter essentially its nature and character as a mordant, which Congress intended to favor by putting it on the free list.

The board finds in its first finding that the importation is produced by dissolving tin in hydrochloric acid in the presence of nitric acid. It is established by the importers' evidence that lac spirits are made in exactly the same way. That being the case, any impurities found in the one must of necessity be found in the other, exclusive of water, if water can be considered an impurity. If it be true, as suggested by Dr. Moore, a witness for the Government, that the formula for making lac spirits would produce an impure tetrachloride of tin, contaminated by stannous salts, nitrate of tin, and some free nitric acid, it follows that the importation which is found to be made by the same method must contain the very same impurities.

The decision of the Board of General Appraisers is *reversed*.