UNITED STATES *v.* C. J. TOWER & SONS (No. 4645)[1]

---

[1] C. A. D. 450.

United States Court of Customs and Patent Appeals, March 6, 1951

*David N. Edelstein*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Joseph Schwartz, James F. Donnelly*, and *J. Bradley Colburn* of counsel) for appellee.

[Oral argument February 6, 1951, by Mr. Weeks and Mr. Colburn]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal by the Government from the judgment of the United States Customs Court, Third Division, C. D. 1224, sustaining the protest of appellee, in so far as the protest claimed that certain imported lecithin was properly dutiable as waste, not specially provided for, at the rate of 7½ per centum ad valorem under paragraph 1555 of the Tariff Act of 1930, as amended by the Trade Agreement with the United Kingdom, T. D. 49753.

The Tariff Act of 1930, so far as pertinent, reads:

Par. 1555. Waste, not specially provided for, 10 per centum ad valorem.

Par. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

The trade agreement with the United Kingdom, T. D. 49753, reduced the rate of duty on waste to 7½ per centum ad valorem.

The goods were imported at the port of Buffalo from Toronto by Victory Mills, Ltd., appellee's firm acting as customs broker for the ultimate consignee of the merchandise, the W. A. Cleary Corporation of New Brunswick, N. J. The consignment was described upon the invoice as "Lecithin, Oil Concentrate, Crude," and was assessed with duty by the collector at the rate of 20 per centum ad valorem under the provisions of paragraph 1558 as a nonenumerated manufactured article.

A previous entry of similar merchandise was before the Customs Court on the issue here presented between the same parties. The protest in that case was overruled and the importation of lecithin was held dutiable as assessed by the collector, *W. A. Cleary Corporation* v. *United States*, Abstract 51524. The court there held that the importer had failed to sustain its burden under the law not only of establishing that the imported product was naturally found as a part of the particular vegetable substance from which it was claimed to be derived, but also of establishing that the imported product had been derived solely through processes which separated it from the native tissue of such vegetable substance and was in a crude state in its imported condition, without further processing.

In other words, the importation in the previous case was described as consisting of lecithin in a soybean carrier to which it was tightly bound, which also contained a quantity of free oil and soybean meal, and no evidence was there produced by the importer which established the method of foreign manufacture by which the imported product was claimed to be derived.

Counsel for appellee in presenting the instant case to the Customs Court indicated that they were then able for the first time to present competent witnesses who were familiar with and could establish the method through which the imported product was derived. An official sample of the merchandise was introduced in evidence by request of both parties and marked Exhibit 1. The testimonial record here consists of evidence furnished by three witnesses for appellee and two for appellant.

Upon the record submitted, the court held that the deficiency in evidence which characterized the importer's failure to sustain its burden of proof in the previous case had been supplied in the instant case, and for the reasons stated in its opinion, the court held "that

the merchandise as imported falls directly within the provisions of paragraph 1555, as amended by T. D. 49753, as waste, not specially provided for, at the rate of 7½ per centum ad valorem."

Appellant contends that the merchandise is not "waste" as that term is used in the statute but that the merchandise is properly dutiable at the rate of 20 per centum ad valorem as a nonenumerated manufactured article, not especially provided for, as a by-product produced by manufacturing processes for its own value as an article of commerce. Appellant contends further that the Customs Court erred in finding that no weight should be given to the opinion evidence submitted in this case on behalf of the Government.

The first witness for the importer was George W. Soutar, employed as supervisor by Victory Mills, Ltd., at its plant used in Toronto for processing vegetable oils, including soybean oil. He described the following process of obtaining the oil and the lecithin from the raw soybeans.

The beans are first ground into small fragments and ground into flakes. The flakes are then placed in an extractor, where they come in contact with a solvent called hexane. Soybean oil is soluble in hexane. The oil is thereby taken out of the flakes, leaving a residue in the extractor of two products: the flakes without the oil, and the crude soybean oil containing gums or sludge.

The crude oil containing the sludge and gums also contains a large quantity of the hexane that still remains in the oil. That mixture is then placed in a heat exchanger, where the hexane is removed for reuse, although the soybean oil continues to retain large quantities of wet gums and sludge. After the removal of the hexane, the crude oil is thereafter placed in storage or holding tanks and water is added to facilitate the separation of the oil from the gums. The crude oil is then put through a mechanical centrifuge and the gums and the water, being heavier than the oil, are thereby separated, the wet gums and the water going to one side and the clarified oil to the other.

The sludge or wet gum thus obtained contains approximately 15 per centum moisture and would soon become decomposed or rancid unless dried. The wet gum is therefore dried in a vacuum drier to remove the water added and to reduce the moisture content to about 2 per centum. The resultant product is a crude phosphatide material, also called crude lecithin. After the heat treatment, the resultant product in the vacuum drier is the merchandise at bar in its imported condition. It is packed in steel drums each containing about 450 pounds. Prior to 1946, the product was discarded as waste. It was taken to a dump in Toronto and thrown away.

The appellee's witness Dr. Parker further stated that the lecithin here in issue was not, to his knowledge, ever used commercially in its imported condition; and Cook, another witness for appellee, testified

unequivocally that the imported merchandise is not and could not be sold in the United States in its imported condition; that before it could be sold it had to be subjected to seven different processes.

The purified refined product obtained from lecithin is sold to confectioners, bakers, and manufacturers of chocolate, paints, enamels, stains, ink, etc. Dr. Parker's uncontroverted testimony is that the raw soybeans contain lecithin as a natural constituent, and that no change in the previously discarded product was effected by the vacuum process hereinbefore described, except the reduction of the moisture content thereof from 15 per centum to 2 per centum for the preservation of the lecithin while in transit.

A careful analysis of the evidence supports the following summary from appellee's brief to indicate that the merchandise is "waste" within the purview of the statute:

All of the processes to which soy beans are subjected, according to the uncontroverted testimony in this case, are to obtain soy bean oil and soy bean cake. The oil itself is processed to remove an undesirable component, lecithin, therefrom. This lecithin does not differ in any material respect from the lecithin naturally present in the soy bean itself. It is clear from the record in the case at bar that the imported lecithin is a byproduct of operations designed to produce soy bean oil. The lecithin is not fit for the uses to which soy beans or soy bean oil are put. It is also a matter of record that prior to 1946 the exporter of the involved merchandise discarded as worthless the lecithin obtained as a result of processing soy beans for oil. The fact that uses were developed after that date for a product formerly considered worthless does not militate against classification of lecithin as waste. No evidence has been adduced that soy beans are processed to extract lecithin therefrom except as a byproduct in obtaining oil from the bean. * * *

The Government sought to rebut the evidence submitted on behalf of appellee that the merchandise in issue in its imported condition was not commercially usable without further processing, and that the sample before the court, which represented the imported merchandise, appeared to be commercial lecithin.[1] Accordingly, the Government called Joseph Eichberg, a graduate of Georgia School of Technology with the degree of Bachelor of Science in commerce, and a member of Phi Kappa Psi, an honorary scholastic society. He was also president of the American Lecithin Corporation, the business of which is to license manufacturers of lecithin to manufacture the product under patents owned by the company, and to develop new uses and sales of lecithin products.

The trial court permitted the witness Eichberg to offer opinion evidence concerning the chemical composition of pure lecithin and of

[1] The ingredients of the sample analyzed by the U. S. Customs Laboratory and submitted in the record, appellant's Exhibit 2, was thus reported:

The sample is commercial lecithin containing about 58% lecithin and 42% fatty oil, probably soya bean oil.

During the trial, the witness Eichberg based his conclusion on the accepted fact that the imported product also contained "approximately one-tenth of one per cent of benzol insoluble."

commercial lecithin, although the witness was no chemist; also that there was a market here for the product in its imported condition. The Customs Court in its well-considered opinion, however, discussed all phases of the point in issue and rejected the evidence in question. It is significant that the lecithin with which the witness claimed familiarity was produced in this country by a patented procedure involving a secret process and apparently when so produced need not be subjected to the many manipulations required to be performed on the different kind of lecithin here imported.

The findings of fact in the case at bar are fully supported by the testimony of eminently qualified witnesses; including the finding that the merchandise is unsuitable for use in its imported condition. The Court of Customs and Patent Appeals has consistently adhered to the long established principle that while it has the power to review findings of the United States Customs Court upon issues of fact, such findings will not be disturbed, especially upon issues which turn upon the intelligence and credibility of witnesses, unless such findings are without evidence in the record to support them or are clearly contrary to the weight of such evidence.[2]

The fact that the imported lecithin is a valuable product having a distinct commercial entity does not deprive the merchandise of its status as waste in a tariff sense, despite the fact that it has been obtained in the processing of soybeans or soybean oil. Moreover, other by-products, similar to the lecithin here in issue, have been heretofore considered by this court and held to be properly dutiable for tariff purposes as waste.[3]

A chemically new commodity, entirely distinct from what existed before, and which has become such by a process of manufacture, is a manufactured article and not "waste" within the meaning of the tariff act.[4] That is not the situation nor the commodity disclosed by the evidence in the case at bar, as the Customs Court properly concluded.

With that conclusion we find no reason for disagreement, and the judgment of the United States Customs Court is accordingly _affirmed_.

[2] _United States_ v._Riebe_, 1 Ct. Cust. Appls. 19, T. D. 30776 (19 Treas. Dec. 783); _Consolidated Color & Chemical Co._ v. _United States_, 2 Ct. Cust. Appls. 192, 195, T. D. 31944 (21 Treas. Dec. 367); _United States_ v. _Arnhold & Co., Inc., et al._, 27 C. C. P. A. (Customs) 135, C. A. D. 74; _United States_ v. _Flexideal Dry Mat Co._, 23 C. C. P. A. (Customs) 270, T. D. 48113.

[3] _Cia Algodonera_ v. _United States_, 23 C. C. P. A. (Customs) 42, T. D. 47686.

[4] _United States_ v. _McLaughlin & Freeman_, 35 C. C. P. A. (Customs) 34, C. A. D. 368; _United States_ v. _Half Moon Manufacturing & Trading Co._, 24 C. C. P. A. (Customs) 232, T. D. 48668; _Standard Varnish Works_ v. _United States_, 59 Fed. 456.