## SHALLUS v. UNITED STATES.

(Circuit Court, D. Maryland. July 1, 1907.)

No. 153 (1,686).

1. CUSTOMS DUTIES—CLASSIFICATION—TIN DISKS.

Tin disks, which are cut from sheets of tin plate in the manufacture of cans, in order to leave openings for filling the cans, and which are used to some extent for closing the openings in smaller cans, also for a variety of other purposes for which such disks are needed, and this without further operations, are not "waste," within the meaning of Tariff Act July 24, 1897, c. 11, § 1, Schedule N, par. 463, 30 Stat. 194 [U. S. Comp. St. 1901, p. 1679], but articles "wholly or partly manufactured from tin plate" within the meaning of Schedule C, par. 140, 30 Stat. 162 [U. S. Comp. St. 1901, p. 1639].

2. SAME—"MANUFACTURED"—"WASTE"—INCIDENTAL PRODUCTS.

Articles produced incidentally to the manufacture of other articles, and which are themselves ready to be used for various purposes without further treatment, are under the tariff laws subject to classification as "manufactured," rather than as "waste."

On Application for Review of a Decision of the Board of United States General Appraisers.

Appeal from the decision of the Board of General Appraisers at New York on the protest of the importer from the assesment by the collector of customs at the port of Baltimore of duty at the rate of 1½ cents per pound on merchandise invoiced as 77 barrels of scrap tin circles, weighing 82,800 pounds and valued at $414, imported from Canada.

Walter Evans Hampton and James W. Purdy, Jr., for importer.
John C. Rose, U. S. Atty.

MORRIS, District Judge. It was claimed by the importer that the merchandise should be dutiable at 10 per cent. as waste, under Act July 24, 1897, c. 11, § 1, Schedule N, par. 463, 30 Stat. 194 [U. S. Comp. St. 1901, p. 1679], or else either at 10 per cent. or 20 per cent., under section 6 of the same act, or at 45 per cent., under paragraph 193, or free under paragraph 683, or dutiable by assimilation of material of chief value under section 7. The merchandise consists of circular tin disks about 1¾ inches in diameter, cut from sheets of tin plate in the manufacture of tin cans for hermetically sealed fruits and vegetables. The top of the tin can must have a hole in it, in order to allow it to be filled, and these disks result from the stamping out of that hole. They can be and are used for a variety of purposes for which a circular disk of sheet tin is needed. For instance: They can

be used for the cap of a can having a hole of somewhat less diameter. They can be used for the tops or bottoms of round tin boxes for salves or medicines or candies. They are largely used by roofers in nailing on sheathing paper, the nail being driven through the disk and affording a more secure hold for the nail head. They are used as caps to the tops of cork stoppers for bottles, and many similar uses. If for these purposes it is essential to have tin disks, and for capping cans they are essential, disks would have to be obtained by cutting them out of sheet tin for the special purpose, if not otherwise obtainable. For this reason, and because they can be so used without undergoing any intermediate process of manufacture, but are fit to use just as they are, they have been held dutiable as an article manufactured from tin plate, under paragraph 140, and not as waste. T. D. 15,786, March 22, 1895; T. D. 24,759, G. A. 5,463, October 31, 1903; T. D. 2,571, G. A. 5,632, April 1, 1904. The collector at the port of Baltimore assessed the merchandise under Act July 24, 1897, c. 11, § 1, Schedule C, pars. 134, 140, 30 Stat. 160, 162 [U. S. Comp. St. 1901, pp. 1638, 1639], at 1½ cents per pound, holding the merchandise to be an article which was manufactured from the tin plate. The protest of the importer was overruled by the General Appraisers.

The facts and the law to be applied are very fully stated in the careful opinion rendered by General Appraiser Fischer in a prior case, which is as follows:

FISCHER, General Appraiser. The merchandise consists of tin disks about 1¾ inches in diameter, upon which duty was assessed at the rate of 1½ cents per pound under the provisions of paragraphs 134 and 140 of the act of July 24, 1897, and which are claimed to be dutiable properly at 10 per cent. under paragraph 463, as waste. or at 10 or 20 per cent., under section 6, or at 45 per cent., under paragraph 193, either directly or by virtue of section 7, or free of duty under paragraph 683. We find from the record, including testimony given by the witnesses for the importer, and from the official samples, that the articles in question are of the precise character and description of those which were the subject of the board decisions in G. A. 5,463 (T. D. 24,759), and G. A. 5,632 (T. D. 25,171). The latter decision is as follows (T. D. 25,171; G. A. 5,632):

"Fischer, General Appraiser. The merchandise is described in the collector's report as 'circular tin disks (new) varying in diameter from 1½ to 3 inches.' Duty was assessed thereon at the rate of 1½ cents per pound under the provisions of Act July 24, 1897, c. 11, § 1, Schedule E, pars. 134, 140, 30 Stat. 161, 162 [U. S. Comp. St 1901, pp. 1638, 1639]; and the importer claims, among other things, that they are properly dutiable as waste, at 10 per cent., under paragraph 463, or at 45 per cent., under paragraph 193. Inasmuch as the importer does not dispute in any way the accuracy of this description, but submits his case solely on the question of law involved, we find the facts to be as stated in the collector's report, and we find, further, that the goods are similar in all respects to those which were held in G. A. 5,463 (T. D. 24,759) to be dutiable at the rate herein assessed. The question of the proper rate of duty on this class of merchandise was decided in the decision just mentioned, after hearing much testimony and on a very complete record, and this protest would be overruled on the authority of said decision without further argument, but that the counsel for the importer in his brief has abandoned his claim under paragraph 463 and has urged with some ingenuity and much pertinacity the claim under paragraph 193—a contention not hitherto much pressed in the various cases of this character that have been passed on by the board. The only question to be decided, therefore, is whether the articles fall properly within the provisions of paragraphs 134 and 140, which read, respectively:

" '134. Sheets or plates of iron or steel, or taggers iron or steel, coated with tin or lead or with a mixture of which these metals or either of them is a component part, by the dipping or any other process, and commercially known as tin plates, terne plates, and taggers' tin, one and one-half cents per pound.'

" '140. No article not specially provided for in this Act, which is wholly or partly manufactured from tin plate, terne plate, or the sheet, plate, hoop, band, or scroll iron, or steel herein provided for, or of which such tin plate, terne plate, sheet, plate, hoop, band, or scroll iron or steel shall be the material of chief value, shall pay a lower rate of duty than that imposed on the tin plate, terne plate, or sheet, plate, hoop, band, or scroll iron or steel from which it is made, or of which it shall be the component thereof of chief value.'

"Or under paragraph 193, which reads:

" '193. Articles or wares not specially provided for in this Act, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum or other metal and whether partly or wholly manufactured, 45 per centum ad valorem.'

"The first point counsel for the importer advances appears to be that the disks are made from tin cans, and that they are, therefore, articles made from articles that are made from tin plate, and that they are not articles made from tin plate. This argument is not founded on fact. In the process of manufacturing tin cans the piece that forms the body of the can is first bent and secured in cylindrical shape, then the bottom is put on, and finally the top, which is a circular piece of tin plate, with a circular piece cut out of the center; the diameter of the cut-out being in proportion to the size of the can. The purpose of cutting this piece out is to permit the filling of the can, which being accomplished, a larger piece than that cut out is soldered on to close the aperture. It is the tin disks thus obtained which, it will be noted, are cut from the tin plate before it becomes part of the can, that form the subject of the importation now in question.

"Another argument of counsel for the importer is that, because the production of these disks was not the primary object of the manufacturing process to which they owe their existence, the main purpose being the fabrication of tin cans, they are, therefore, not dutiable as 'articles manufactured from tin plate.' This contention is untenable. It is probably safe to assume that the counsel for the importer will admit that the tin cans produced as described are articles made from tin plate. To assume the contrary would be absurd. And, this granted, how can it be said that the tin disks made from the same sheet of plate, and at the same time, are not equally 'articles made from tin plate'? That two merchantable articles, each useful for different purposes, can be made at one operation, is a tribute to modern mechanical ingenuity and economical methods of production; but it is not a reason for classifying one of the articles at a lower rate of duty than the other, when the explicit provisions of the same tariff paragraph cover both. A reference to the decision of the Supreme Court in Junge v. Hedden, 146 U. S. 233, 13 Sup. Ct. 88, 36 L. Ed. 953, amply demonstrates that the word 'articles' is broad enough to cover these disks, irrespective of the manner in which they were manufactured. That a by-product, or incidental product, occurring in a manufacturing process, may nevertheless be 'a manufactured article,' was decided in the case of Standard Varnish Works v. United States, 59 Fed. 456, 8 C. C. A. 178, wherein the Circuit Court of Appeals for the Second Circuit, in passing upon candle tar, a residuum or by-product in the manufacture of candles, says: 'The process of distillation to which the tallow, grease, or oil is subjected is apparently not undertaken with the intention thereby to obtain this new article. What is sought for is the glycerine and fatty acid to be made into candles. * * *' As the goods are manufactured articles made from tin plate, they fall precisely within the provisions of paragraphs 134 and 140, and there is no need of recourse to the 'basket clause.' Paragraph 193. It is quite conceivable, and, indeed, it was intimated by a witness in one of the hearings held by the board on other protests on the same class of goods, that these disks are sometimes stamped directly out of tin plates or sheets, in which case it is certainly not open to argument that they are anything else but 'articles manufactured from tin plate.' If, then, the contention of the

importers should prevail in this instance, we should have two different rates of duty for the same article; for it must be remembered the disks, in the condition as imported, differ in no respect whatever, being complete articles fully finished and ready for use just as they are for the various purposes cited in G. A. 5,463.

"The third point urged by the counsel for the importer is that, if the assessment as made is affirmed, the result will be that, owing to the low price of these disks consequent on the circumstance of their production, the duty levied thereon will be considerably higher ad valorem than the more valuable articles made from tin plate pay. This result, however inequitable it may seem, is not an unusual concomitant of subjecting goods to duty at specific rates. It is not within our jurisdiction to assume to readjust the tariff schedules on equitable principles. That function belongs to the lawmaking power. It is urged that to affirm the assessment of duty as made would work an injustice and absurdity, and cases are cited to show that an interpretation of a statute that would so result should be avoided. What amounts to an 'injustice' or 'absurdity' is a matter of opinion. Where the statute is so explicit, and without ambiguity, either latent or patent, as the one under which these goods were assessed, there is no need of any strained construction. The statute interprets itself. In Thornley v. United States, 113 U. S. 310, 5 Sup. Ct. 491, 28 L. Ed. 999, the Supreme Court said: 'Where the meaning of a statute is plain, it is the duty of the courts to enforce it according to its obvious terms. In such a case there is no necessity for its construction.' And in Lewis v. United States, 92 U. S. 618, 23 L. Ed. 513: 'Where the language of a statute is transparent and the meaning clear, there is no room for the office of construction. There should be no construction where there is nothing to construe.' Note, also, Marine v. Packham, 52 Fed. 579, 3 C. C. A. 210, and Coles v. Collector, 100 Fed. 442, 40 C. C. A. 478.

"We are of the opinion that the contention of counsel for the importer is clearly not maintainable. The protest is accordingly overruled, and the decision of the collector affirmed."

The testimony taken in the case under consideration leads us to no different conclusion from that arrived at in the previous cases, and, following the decision quoted, we overrule the protest and affirm the assessment of duty as made by the collector.

The decision of the Board of United States General Appraisers is affirmed.