AMERICAN SMELTING & REFINING CO. *v.* UNITED STATES (No. 2348).[1]

ARSENICAL FLUE DUST.

> Arsenical flue dust, a by-product of lead smelting, imported for the purpose of recovering its arsenious acid content, is not "arsenic or arsenious" acid under free list paragraph 387, tariff act of 1913, because it contains no more than 75 per cent, or even less, of arsenious acid, whereas it is made to appear that commercial arsenious acid is 95 to 99 per cent pure. It is shown by its analysis not to be arsenic, sulphide of arsenic or orpiment, under paragraph 403. It is not a metallic mineral substance in a crude state under paragraph 154, because it contains no metal as such. It is not a waste under paragraph 384, because shown to be produced by means of special and even elaborate manufacturing processes for its own value as a separate article of commerce. It is obviously at least partly manufactured, and, hence, not classifiable as a miscellaneous unmanufactured article under paragraph 385. Its classification as a nonenumerated manufacture, under paragraph 385, must be affirmed, notwithstanding the anomaly of taxing the material from which arsenious acid is produced when the act admits arsenious acid itself free of duty.

United States Court of Customs Appeals, May 19, 1924.

APPEAL from Board of United States General Appraisers, Abstract 46464.

[Affirmed.]

*Gerry & Wakefield* for appellant.
*William W. Hoppin*, Assistant Attorney General (*Charles D. Lawrence* and *Edward J. Neary*, special attorneys, of counsel), for the United States.

[Oral argument May 6, 1924, by Mr. Wakefield and Mr. Lawrence.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

MARTIN, Presiding Judge, delivered the opinion of the court:

The merchandise involved in this case was invoiced and entered under the name of flue dust or arsenical flue dust. It is a fine powder containing arsenious acid, and is imported into this country as a material from which that substance may be produced.

It was assessed with duty at the rate of 15 per cent ad valorem as a nonenumerated manufactured article, under paragraph 385 of the tariff act of 1913. The importer protested, claiming free entry for the merchandise under the enumeration of arsenic or arsenious acid in paragraph 387, or as arsenic, sulphide of arsenic or orpiment

---

[1] T. D. 40226.

under paragraph 403, or alternatively an assessment at the rate of 10 per cent ad valorem, either as a metallic mineral substance in the crude state under paragraph 154, or as waste not specially provided for under paragraph 384, or as a nonenumerated unmanufactured article under paragraph 385.

The protest was submitted to the Board of General Appraisers and was overruled, from which judgment the importer has appealed.

The paragraphs thus cited in the protest read as follows:

(Free list.)

387. Acids: Acetic or pyroligneous, arsenic or arsenious, carbolic, chromic, fluoric, hydrofluoric, hydrochloric or muriatic, nitric, phosphoric, phthalic, prussic, silicic, sulphuric or oil of vitriol, and valerianic.

403. Arsenic and sulphide of arsenic, or orpiment.

(Dutiable list.)

154. Metallic mineral substances in a crude state, and metals unwrought, whether capable of being wrought or not, not specially provided for in this section, 10 per centum ad valorem; monazite sand and thorite; thorium, oxide of and salts of; gas, kerosene, or alcohol mantles, treated with chemicals or metallic oxides, 25 per centum ad valorem; and gas-mantle scrap consisting in chief value of metallic oxides, 10 per centum ad valorem.

384. Waste, not specially provided for in this section, 10 per centum ad valorem.

385. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for in this section, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of 15 per centum ad valorem.

The article now in question is a product of lead smelting operations, in which ores containing lead, silver, gold, and sometimes copper, are smelted in a lead blast furnace. The ores in a raw state, together with various fluxes, are mixed with coke and fired in the furnace, with the result that gases carrying dust and smoke are blown off into the flues. These contain arsenic, also lead, and at times a small quantity of silver. The gases are forced into what is known as a bag house, which is a building about 60 feet high with a floor about 12 feet from the ground. The floor is perforated with large holes, in this case with about 3,000 of them, and to each opening is attached a long bag about 30 feet in length and about 18 inches in diameter. The lower floor or cellar of the bag house is divided into compartments, each having a valve connected with the distributor flue. A fan draws the smoke and dust from the flue and forces them into these compartments, whereby the solid particles therein are retained by the bags in the form of fine powder. This contains a high percentage of arsenic or arsenious acid, which is refined from it after importation by a smelting process somewhat similar to the one just described.

As already stated, the present importation consisting of this powder was assessed with duty at the rate of 15 per cent ad valorem as a nonenumerated manufactured article, and is claimed to be

entitled to free entry as arsenic or arsenious acid, or as sulphide of arsenic or orpiment, or to be dutiable at no more than 10 per cent ad valorem as a metallic mineral substance in a crude state, or as waste, or as a nonenumerated unmanufactured article. The board sustained the assessment.

The foregoing claims for the free entry of the imported article are not sustained by the record. It is fairly established by the testimony that in the trade and commerce of this country a powder would not bear the name of arsenic or arsenious acid unless it contained from 95 to 99 per cent of that substance, whereas it appears that these importations contain no more than 75 per cent of that ingredient and in most cases much less. The analysis also discloses that the article is not a sulphide of arsenic or orpiment. It is made plain by the record that the present article was not imported as arsenious acid, nor was it intended for use or for sale as such, but as a material for another smelting operation by means of which the arsenious acid of commerce would be produced. The article as imported therefore is not arsenic or arsenious acid.—United States v. Davies, Turner & Co. (5 Ct. Cust. Appls. 196; T. D. 34325).

We think also that the imported article is not dutiable under the classification of a metallic mineral substance in a crude state,·since it contains no metal as such.—Hempstead v. United States (122 Fed. 538, reversing G. A. 4936; T. D. 23091).

The testimony also fails to sustain the claim that the imported article is a waste dutiable at 10 per cent ad valorem under paragraph 384, supra. It is rather a by-product, which is produced by means of special and even elaborate manufacturing processes for its own value as a separate tariff entity and article of commerce. The by-product thus obtained is of itself a manufactured article, or at least is partly manufactured, and is not a raw or unmanufactured article under paragraph 385, supra.—Standard Varnish Works v. United States (59 Fed. 456); Shallus v. United States (155 Fed. 213).

We are therefore constrained to affirm the judgment of the board sustaining the assessment of the article as a nonenumerated manufactured article. We are not unmindful of the fact that this conclusion produces an anomalous result in that it subjects to duty a substance which is imported apparently as a material for the production of an article which if imported in its refined condition would be entitled to free entry. In other words arsenious acid is entitled to free entry under the act, but this material from which arsenious acid is produced in this country is thus held to be subject to duty. It must be admitted that this result is not consistent with the ordinary principles of tariff legislation, but we find no other construction of the statutes open to us. The judgment of the board is therefore *affirmed*.