(C.D. 2222)

PHILIPP BROS., INC. v. UNITED STATES

United States Customs Court, Third Division

(Decided December 6, 1960)

*John D. Rode* for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Murray Sklaroff* and *Margaret M. Vallerie,* trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

RICHARDSON, Judge: This suit presents for determination the question of the proper classification of eight importations of certain tan-

talite-columbite slags described in the invoices as "scories tantalifères, quality A" and "scories tantalifères, quality B."

The collector of customs classified the merchandise as waste, not specially provided for, and assessed duty at the rate of 4 per centum ad valorem under 19 U.S.C.A., section 1001, paragraph 1555 (paragraph 1555, Tariff Act of 1930), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade (T.D. 52739). The plaintiff claims that the merchandise is free of duty under 19 U.S.C.A., section 1201, paragraph 1664 (paragraph 1664, Tariff Act of 1930), as "Metallic mineral substances in a crude state, such as drosses, skimmings, residues, brass foundry ash, and flue dust, not specially provided for." The protest contains an alternative claim for classification as a crude mineral under paragraph 1719, Tariff Act of 1930, but this claim, although not formally abandoned, has not been pressed.

At the instance of counsel for plaintiff, there was offered and received in evidence certain United States Customs Laboratory reports and the testimony of one witness, Henry Charles A. Coste, taken by deposition.

The witness, a mining engineer, is associated with Compagnie Geomines, Brussels, Belgium, as managing director and chief engineer. Compagnie Geomines is in the tin mining and foundry business, and the material in issue was produced in its plant at Manono, Belgian Congo, by means of an electric tin refining process perfected by the witness, and described by him as follows:

The raw material is Cassiterite (tin ore). This material is treated for the extraction of tin. Tailings constitute the material which we sell as "Scories Tantalifères." The order of manufacture is as follows: First treatment: Treatment of Cassiterite with charcoal, lime and appropriate meltings, the results of which are 1) raw tin; 2) rich slags. The second treatment comprises the treatment of these rich slags in an electric furnace for obtaining 1) tin; 2) iron and tin alloys (hartlingen) ; and 3) tailings, which are the poor slags that contain tantalum and niobium, which we sell as such in the United States.

The witness stated that each shipment of the tailings or poor slags is subjected to a physical test performed with a binocular microscope and a magnetic separator, and to a chemical analysis to determine the tantalum, niobium, tin, and titanium content, before it is exported to the United States. The tests have always revealed the presence of metal as such in the slags. The witness further stated that, in his opinion, the merchandise as exported to the United States was in a crude state, was a raw material not in the metallic state, was a byproduct of the smelting of tin ore, and was a residue.

In response to cross-interrogatories, the witness stated that the tantalum and columbium (niobium) are present in the instant merchandise as compounds and not as free metals. He explained that the difference in the "A" and "B" qualities of the "scories tantalifères" lies in the fact that the former contains approximately 16 to 21 per centum

of oxides of tantalum and niobium, while the latter contains only approximately 10 per centum of such oxides. According to an analysis submitted by the witness (plaintiff's exhibit 2), the chemical composition of the involved slags is as follows:

|  | Scories "A" | Scories "B" |
|---|---|---|
| Sn | 0, 5–I, 5% | 0, 5 à I, 5% |
| Ta205 | I0 à 13% | 4 à 6% |
| Nb205 | I3 à 10% | 6 à 4% |
| FeO | 6 à 9% | 7 à I0% |
| SiO2 | 30 à 35% | 32 à 36% |
| CuO | 13 à 20% | 15 à 22% |
| Al203 ⎫ MgO ⎬ MnO ⎭ | ±20% | ±22% |
| TiO2 | I, 5 à 2, 5% | I à 2% |

Two of the United States Customs Laboratory reports in evidence (No. 43 and No. 5300) are identical in content and read thus:

The sample is composed of small glass-like fragments and has the characteristics of a slag. It is non-magnetic. Spectrographic analysis shows the presence of considerable columbium (niobium), tantalum, aluminum, calcium, and silicon.

The New York Customs Laboratory reports an X-ray diffraction pattern for the sample showing amorphous patterns having little, if any, crystalline structure. We are unable to detect any metal as such.

A third Customs Laboratory report (No. 5050) states:

The sample is composed of small, black, glass-like fragments and has the characteristics of a slag or residue from a metallurgical process. Spectographic analysis shows the presence of considerable silica, significant amounts of tin, aluminum, columbium (niobium), and tantalum, and smaller amounts of iron and other metals. There is little, if any, phosphate. We are unable to determine by available methods whether or not the metals are contained as such.

By amendment, the last line of the foregoing report was changed to read as follows:

"We are unable to detect any metals as such."

In order to be classifiable under paragraph 1664, *supra*, as a metallic mineral substance, in a crude state, the mineral substance must be such as is specifically enumerated in the paragraph, that is "drosses, skimmings, residues, brass foundry ash, and flue dust," and it must contain metal as such. *United States* v. *Nichols Copper Co.*, 29 C.C.P.A. (Customs) 186, C.A.D. 190; *Alpha Lux Co., Inc.* v. *United States*, 27 C.C.P.A. (Customs) 162, C.A.D. 79; *Hempstead* v. *Thomas*, 122 Fed. 538; *American Smelting & Refining Co.* v. *United States*, 12 Ct. Cust. Appls. 212, T.D. 40226. Congress intended that substances such as those enumerated in the paragraph, containing metallic mineral, should be regarded as "crude." See *United States* v. *Nichols Copper Co., supra*, at page 191.

It is clear that the substance here involved is a residue resulting from a metallurgical process. The manner in which it was produced, the testimony of the plaintiff's witness to that effect, and the statement in laboratory report No. 5050 that "The sample . . . has the characteristics of a slag or residue from a metallurgical process" all support this conclusion. It is also clear that the product contains metal as such, notwithstanding the statements in the customs laboratory reports indicating that the Government chemists were unable to detect metal as such in the samples of the merchandise tested by them. The chemical analysis (exhibit 2) shows the presence of tin in amounts ranging from one-half of 1 per centum to 1½ per centum. Plaintiff's witness testified that metal as such was present in the involved slags, and this fact seems to be conceded by defendant, for, at the trial, counsel entered into the following stipulation:

Mr. Rode: . . . I am willing to stipulate with counsel for the Government that the metal which is present as such in the imported material is not commercially recoverable, but that the imported material is rather processed after importation for recovering the tantalum and columbium which is contained therein.

Mr. Sklaroff: The Government so stipulates. The Tantalum and columbium is [sic] not there as metal per se; is that correct?

Mr. Rode: That's right. I agree to that.

In the case of *American Smelting & Refining Co.* v. *United States*, 62 Treas. Dec. 1018, Abstract 22178, certain merchandise consisting of fluxes and slag was involved. The slag was referred to as listed in "Schedule D," and was a residue or furnace byproduct containing small percentages of zinc, iron, sulphur, gold, and silver, combined with silica and other natural impurities. The court followed the decision in *United States* v. *Wells, Fargo & Co.*, 1 Ct. Cust. Appls. 158, T.D. 31211, in which it was stated that "metallic mineral substances consist of a metal combined with some foreign or other substance," and concluded that the fluxes and slag were metallic mineral substances in a crude state within the meaning of paragraph 1664, and, by reason thereof, entitled to entry free of duty.

In rendering its decision, the court said:

. . . the slag is merely a residue or furnace by-product containing small percentages of certain named metals combined with silica and other natural impurities. Both fluxes and slag, therefore, seem to respond to the court's definition of what constitutes metallic mineral substances in a crude state.

In *B. R. Lawrence* v. *United States*, 23 Treas. Dec. 643, Abstract 30958, merchandise described as "aluminum dross" was before the court for consideration. According to the chemical analysis, the dross consisted of 86.93 per centum aluminum oxide, 5 per centum aluminum, 4.07 per centum iron oxide, 4 per centum silicia, traces of

tin, sulphur, and phosphorous. The court held that the involved dross was a crude metallic mineral substance.

In the case of *Phillips Bros., Inc.* v. *United States*, 15 Cust. Ct. 266, Abstract 50484, which plaintiff cites as controlling herein, merchandise invoiced as "ferro tantale niobium" was held to be free of duty under paragraph 1664 as a crude metallic mineral substance. According to the testimony of the chief chemist of the United States Customs Laboratory, the merchandise was produced as follows:

> . . . The ore is treated in an electric furnace to recover the tin. At the same time that the tin is recovered there is a slag formed. This slag consists primarily of oxides of tantalum niobium and perhaps silicious material, and so forth. In order to recover some of the rare metal, tantalum and niobium, the slag is further treated with lime and with charcoal, producing the material shown as Collective Illustrative Exhibit 1 in this case.

The witness stated that the material was a residue, that it contained metal as such, and that it was a crude metallic mineral substance.

The merchandise involved in the foregoing case is alluded to in a memorandum from the chief chemist to the appraiser in Baltimore. This memorandum is attached to Customs Laboratory report No. 5050 and was admitted into evidence without marking. Reference to report No. 5050 is made in the memorandum, and it is noted that several other similar importations showing, according to the invoices, a combined oxide content of about 25 to 26 per centum were stated by the importer to be a slag residue from the production of tin ore. The memorandum then states, among other things, that analytical data from the New York Laboratory indicates the ferro tantale niobium (columbium) described in Abstract 50484 might be comparable to the merchandise in question, except that it appears to be a concentrate containing more than twice the oxide content.

Inasmuch as the merchandise in issue is one of the exemplars enumerated in paragraph 1664 and contains metal as such, and since it appears to be of the same character as the material involved in *Phillips Bros., Inc.* v. *United States, supra*, we are of the opinion, in view of that case and the other authorities cited above, that said merchandise is properly classifiable as a metallic mineral substance in a crude state, and entitled to free entry under paragraph 1664 as claimed by plaintiff.

Defendant, however, contends that the material under consideration should not be so clasified on the theory that the amount of metal as such therein is a mere trace, that it is insufficient in amount or significance to justify characterization of the substance as "metallic," and that, therefore, under the doctrine *de minimis non curat lex* (meaning the law does not notice or concern itself with trifling matters) should be disregarded in determining the tariff classification of the merchandise.

Plaintiff maintains that the *de minimis* doctrine operates in courts of law only in cases where the gist of the action is damages, and has no application to the case at bar, involving, as it does, a matter of substantive right as to the classification of merchandise under the tariff act.

In view of the many cases involving the question as to whether certain components of imported merchandise should be ignored as insignificant under the *de minimis* rule for tariff classification purposes, it is apparent, contrary to the contention of the plaintiff, that the rule may be invoked and applied in such cases. However, it is also apparent, from a consideration of the cases involving the rule, that there is no fixed formula or rule of thumb by which it may be determined when the amount of a component is so insignificant that it should not be permitted to affect the tariff classification of the merchandise of which it is a part. In many instances, an ingredient present in a product in quantities much more substantial than those involved in the instant case has been disregarded as negligible by the courts, and, conversely, on other occasions, they have refused to ignore, as insignificant, amounts of a material approximately the same or even smaller than the percentages of the metal in the importations at bar. The answer to the question in each case may depend upon a variety of circumstances, including the character of the merchandise and the statutory provisions involved. *Varsity Watch Co.* v. *United States*, 34 C.C.P.A. (Customs) 155, C.A.D. 359.

Under the circumstances of this case, we are not convinced that, in classifying the merchandise, the metal as such contained therein should be ignored under the *de minimis* rule as negligible. It is true that the percentages of such metal are small, but it is also true that the slag or residue involved in the case of *American Smelting & Refining Co.* v. *United States, supra,* contained only "small percentages" of certain named metals. Nevertheless, as we have pointed out, the court there held the material to be properly classifiable as a metallic mineral substance in a crude state.

The defendant has cited several cases in which the *de minimis* rule was successfully invoked, but, in none of the cited cases is the factual situation on all fours with the facts of the case at bar, and, in our opinion, none of them is authority for the proposition that the metal as such in the present importations is a mere trace and must be disregarded as negligible for classification purposes.

The case upon which defendant appears to place particular reliance is *C. J. Tower & Sons* v. *United States*, 34 Cust. Ct. 55, C.D. 1678. The question there was whether a certain pyrite concentrate containing lead in amounts varying from 0.09 to 0.1 of 1 per centum of lead

was properly classifiable as a "lead-bearing ore." The court, one judge dissenting, held, as a matter of law, that the concentrate was not a lead-bearing ore. The court stated in the course of its opinion:

However, our main concern here is whether or not the imported pyrite concentrate is, in fact, a lead-bearing ore within the scope of that term, as used in paragraph 391, *supra*. We believe that question is resolved by the unrefuted testimony of experienced men who are learned in the sciences dealing especially with geology, metallurgy, and mineralogy to the effect that the importations are not lead-bearing ore, in fact or in any true sense of the term, and we so find. The amount of lead present is what scientists would characterize as a mere trace, which is regarded as a negligible quantity, and, under the rule *de minimis*, should be ignored in the classification of the merchandise.

From the quoted excerpt, it is clear that the decision of the court in the foregoing case was influenced by the testimony of highly qualified witnesses to the effect that the concentrate was not a lead-bearing ore, and that the amount of lead present therein was considered by scientists to be a mere trace. The cited case is of no aid to the defendant here, since there is no evidence of a comparable nature in the instant case.

Defendant urges that the tin in the present importations should be disregarded not only because it is present in such small quantities, but for the added reason that it serves no useful purpose in the product. In support of this proposition, defendant cites the cases of *Canada Dry Ginger Ale, Inc.* v. *United States*, 43 Cust. Ct. 1, C.D. 2094; and *B. Westergaard & Co.* v. *United States*, 19 C.C.P.A. (Customs) 299, T.D. 45469. The merchandise in the case first cited consisted of ginger ale extract containing 0.49 per centum of alcohol by weight. The court found from the evidence that the alcohol was present in the imported product as a trace left over from the process of extracting flavor from the ginger root, and that it served no useful purpose or function. It, therefore, held that the alcohol was too insignificant to be considered in determining the tariff classification of the merchandise. In the *B. Westergaard & Co.* case, *supra*, the merchandise consisted of meat cakes, fish balls, and fish cakes, containing a quantity of potato flour in amounts ranging from 3½ per centum in the fish cakes to 6 per centum in the meat balls and meat cakes. According to the uncontradicted evidence, the potato flour merely served the mechanical purpose of holding the ingredients together during the cooking and sterilizing process. On the basis of the presence of the flour, it was contended that the merchandise should be classified as vegetables with meat, or vegetables with fish, under paragraph 773, Tariff Act of 1922. In rejecting the claim for such classification, the court stated:

In view of the small percentage of potato flour present and its function we are of opinion that its quantity is insufficient to give the involved cakes and

balls the character of vegetables with fish or of vegetables with meat within the purview of paragraph 773.

It appears that the court in these cases gave controlling significance to the factors of quantity and function in concluding that the controverted ingredients there involved should be disregarded in classifying the merchandise. However, in other cases, the courts have not appeared to attach such significance to these factors.

In the case of *Bullocks, Inc.* v. *United States*, 26 C.C.P.A. (Customs) 15, T.D. 49558, the court refused to ignore garters of elastic fabric representing less than 1 per centum of the value of the garments to which they were attached and held the garments to be in part of elastic fabric.

In *Bemis Bro. Bag Co.* v. *United States*, 11 Ct. Cust. Appls. 373, T.D. 39162, the court held plain woven jute padding, with a colored stripe running along each selvage and constituting less than 3 per centum of the surface of the cloth, to be colored jute fabric, despite the fact that, as the court expressly pointed out, the stripes served no purpose other than that of identifying the goods to the trade as padding.

In *Penn Surgical Mfg. Co.* v. *United States*, 64 Treas. Dec. 563, T.D. 46746, certain aseptic bone wax was assessed with duty under paragraph 24 of the Tariff Act of 1930 as a medicinal preparation containing alcohol. Plaintiff claimed that the wax was properly classifiable under paragraph 5 of the same act as a medicinal preparation, not specially provided for.

The court, one judge dissenting, rejected plaintiff's claim, and, in doing so, stated:

It thus appears that as imported the merchandise consisted of a solid portion and a liquid portion, and that among the constituents of the liquid portion was alcohol, 2 per centum by volume. Upon this showing it does not seem to be open to question that the merchandise as imported was a medicinal preparation containing alcohol. It is a notable fact that in framing paragraph 24, *supra*, insofar as it provides for medicinal preparations containing alcohol, Congress specified no minimum of alcoholic content, and it is not for this court to say that 2 per centum of alcohol may be treated as though it were a mere trace.

In *United States* v. *P. R. Dreyer, Inc.*, 28 C.C.P.A. (Customs) 325, C.A.D. 162, certain Spanish oil, containing from one-quarter to one-half of 1 per centum of orthocresol, was held to be a mixture or combination. The orthocresol served no purpose in the merchandise.

The foregoing cases demonstrate that there is no established rule to the effect that a material must be ignored as insignificant for tariff classification purposes because it is present in imported merchandise in small amounts and/or serves no definite purpose therein.

It is to be noted that the requirement that a substance must contain metal as such to be classified as a metallic mineral substance under

paragraph 1664 is not expressly set forth therein, but has been read into the statute by judicial construction. *Hempstead* v. *Thomas*, *supra*; *Alpha Lux Co., Inc.* v. *United States*, *supra*. In none of the cases which established the "metal as such" rule did the court set forth any minimum requirement with respect to the amount of metal. The rule requires only that the material contain metal as such.

The slags in the instant case contain metal as such, and we are not persuaded that it should be disregarded in classifying the merchandise. We, therefore, adhere to our conclusion set forth in this opinion, *supra*, and hold that the merchandise in issue is a metallic mineral substance in a crude state and is properly free of duty under paragraph 1664. In view of this conclusion, it is unnecessary to consider the alternative claim for classification as a crude mineral under paragraph 1719, Tariff Act of 1930.

Judgment will issue for plaintiff in harmony with the views expressed herein.