(C.D. 2361)

PHILIPP BROS., INC., ET AL. v. UNITED STATES

United States Customs Court, Third Division

(Decided September 25, 1962)

*John D. Rode* for the plaintiffs.

*Joseph D. Guilfoyle*, Acting Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges; DONLON, J., concurring

RICHARDSON, Judge: Eleven protests covering 24 entries are before the court for determination of the proper classification of imported merchandise, consisting of tantalite-columbite slags of Belgian-Congo origin. The subject merchandise was imported prior to the decision of this court in *Philipp Bros., Inc.* v. *United States*, 45 Cust. Ct. 190, C.D. 2222, decided December 6, 1960, wherein we held, on the evidence there presented, that tantalite-columbite slags, imported from the Belgian Congo, were classifiable, as claimed under paragraph 1664 of the Tariff Act of 1930, as a metallic mineral substance in a crude state, free of duty, as against the collector's classification of such merchandise as waste, not specially provided for, under paragraph 1555 of said act, as modified by trade agreement concessions, dutiable at the rate of 4 per centum ad valorem. Our decision in

*Philipp Bros., Inc.* v. *United States, supra,* was based upon a finding that metal as such was present in the imported material.

The claim made and the issue raised in the instant protests are the same as the claim and issue in the cited case. The question presented in the protests at bar is whether there is evidence of record of the existence of metal as such in the slags imported by the plaintiffs to support their claim for classification of the merchandise as a crude metallic mineral substance under paragraph 1664, *supra.* The protests at bar were submitted upon a stipulation which, among other things, incorporated into the instant record evidence that was before the court in the cited case. Such evidence consisted of a deposition of one Henry Charles A. Coste, a mining engineer associated with Compagnie Geomines, the producer of the slag material, an analysis report of the chemical composition of the slags, and customs laboratory reports of slag sample analyses.

Not incorporated into the instant record, however, is a concession which was made in the cited case to the effect that metal as such was present in the imported material. It is the absence of such a concession in the record at bar which we understand to now constitute the gravamen of the defendant's principal argument for a result opposite to that reached in the cited case. In other words, the defendant's position now is that, in the absence of such a concession as to the presence of metal as such in the importations at bar, the record, as stipulated, is barren of such proof. But the answer to this contention is to be found in the cited case itself. We think it is abundantly clear from the record in the case that our decision was not predicated upon the concession alone.

After noting in our opinion in that case the process by which the imported material was produced from tin ore, according to the testimony given by Mr. Coste, we pointed out the fact from the evidence that, before exportation, the slags were subjected to tests and to a chemical analysis, the findings of which had always disclosed the presence of metals as such in the slags. We further pointed out in the opinion the traces or small percentages of tin in the slags which were manifested in the chemical analysis. Elsewhere in the opinion, we discussed the *de minimis* doctrine at some length in connection with such traces or percentages of metal and excluded the doctrine from application to the evidence in that case. Such a discussion would hardly have been regarded by us as being essential or even pertinent to our decision in that case if we intended to base our decision upon the aforementioned concession, and, concerning which, we made but a passing reference. Particularly so, since the concession related solely to compounds of tantalum and columbium, the two substances which predominated the material percentage-wise. At best,

we regarded the concession only as an additional reason why we reached the conclusion that we did in that case.

We see no reason why our decision in *Philipp Bros., Inc.* v. *United States, supra,* is not controlling upon the instant record. Additional evidence has not been forthcoming from the defendant who, apparently, has elected to stand upon the customs laboratory reports as being indicative that no metal as such exists in the imported slags. And, in all fairness, we cannot conclude that such is the effect of these reports. We do not think the conclusion of the Government's chemists in the reports that "We find no evidence of the presence of metal as such" to be evidence that no metal is, in fact, present in the importations, particularly in the face of positive evidence proffered by the importer of the presence of metal in the material in question.

Another circumstance in the instant record tends to lend support to this conclusion. The material which was examined by Government chemists consists of prepared samples in powder form (see laboratory report in entry No. 349377 in protest No. 58/5645). The form of the material subjected to examination bears some significance, in at least one instance, in the aftermath of a Government chemist's negative report of metal content. The consignee, acting on the theory that such samples might have lost their metal content in the grinding operation undertaken in the preparation of the samples for analysis, submitted a special unground sample of the material to each of two reputable commercial laboratories for examination. It appears that both of the reports from these laboratories confirmed the presence of metal in the special samples. This information was disseminated by the consignee to the collector at Galveston, Tex., and the appraising officer at the port of New York (see letter, dated October 8, 1957, in entry No. 26 under protest No. 59/4160). On the basis of these findings, the consignee requested an examination for metal content by the customs laboratory of a special, unground, and sealed sample obtained from one of the commercial laboratories and designated "sample #134." This sample and copies of the aforesaid reports of the commercial laboratories were forwarded to the collector at Galveston, Tex.

It will be noted that the entry papers disclose no further information regarding "sample #134" or any examination of this sample, or even if the Government undertook to examine it for metal content, as requested by the consignee. The Government's lack of response, under the circumstances, does little, if anything, in our opinion, to point up the reliable character of its testing procedures for ascertaining the metal content or the lack of it in the imported material. We think that something more is desired before we can accept the negative findings of the customs laboratory reports of sample analyses as now constituted as evidence of the lack of a metal content in the imported material.

On the record before us, we hold, upon the authority of *Philipp Bros., Inc.* v. *United States, supra,* that the subject merchandise covered by the protests herein is properly classifiable as a metallic mineral substance in a crude state under paragraph 1664 and is entitled to free entry as such. The protests are sustained, and judgment will be entered accordingly.

### CONCURRING OPINION

Donlon, Judge: The reports of the United States Customs Laboratory, on which defendant relies, find enumerated metallic elements but no evidence of metal as such.

What this means, is not explained. In *Alpha Lux Co., Inc.* v. *United States,* 27 C.C.P.A. (Customs) 162, C.A.D. 79, our appeals court distinguished between minerals that contain metallic elements and those that contain chemical elements.

Here, all analyses show the presence of either metals or metallic elements in the slag. Even defendant's proofs confirm that tantalum, titanium, iron, and other metallic elements were found.

The duty-free provision of paragraph 1664 is for "Metallic mineral substances in a crude state * * *." Defendant's proofs, showing that the slag contained the metallic elements enumerated in the Government laboratory reports, have in fact confirmed, rather than rebutted, the plaintiffs' proofs that this slag is a *metallic* mineral substance.

I concur that, on the proofs before us, the protests should be sustained.