We are therefore of the opinion that the claims in the protest be overruled without affirming the classification.

(C.D. 4164)

AMERICAN SMELTING & REFINING Co. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided January 20, 1971)

*Rode & Qualey* (*John S. Rode* of counsel) for the plaintiff.
*L. Patrick Gray, III*, Assistant Attorney General (*Peter Jay Baskin*, trial attorney), for the defendant.

Before RICHARDSON and LANDIS, Judges, and ROSENSTEIN, Senior Judge

LANDIS, Judge: Plaintiff protests that zinc dross, imported from Canada and described on the entry invoice as "UNSWEATED HOT DIP GALVANIZERS ZINC DROSS SCRAP", was improperly classified under the Tariff Schedules of the United States (hereinafter TSUS).

Customs at Philadelphia, the United States port of entry, classified the zinc dross as an unwrought alloy of zinc, dutiable at 19 per centum ad valorem, under TSUS item 626.04.

Plaintiff claims that zinc dross is *eo nomine* provided for in TSUS as a metal-bearing material of a type commonly used for the extraction of metal or as a basis for the manufacture of chemical compounds and should be classified as such under TSUS item 603.30. The duty rate on zinc dross under 603.30 is 0.75 cent per pound.

TSUS items 603.30 and 626.04 are in schedule 6 of the tariff schedules which covers metals and most metal products. Schedule 6, part 1, where TSUS item 603.30 appears, is the classifying part for metal-bearing ores and certain other metal-bearing materials. Schedule 6, part 2, where TSUS item 626.04 appears, contains various subparts covering precious metals, base metals, their alloys, their so-called basic shapes and forms, and metal waste and scrap. TSUS item 626.04 is in the classifying zinc subpart H.

The briefs on both sides, to a considerable extent, rely on the TSUS schedule, part, and subpart "interpretative headnotes which specify certain rules of interpretation, define important terms, prescribe special procedures and, in general, clarify the relationships between the various schedules, parts, and subparts, and the classification descriptions incorporated therein"[1] to support their respective positions. The interplay of the headnotes and the classifying items 603.30

---

[1] Tariff Classification Study Submitting Report, page 9.

and 626.04 comes across in the relevant context of schedule 6, as follows:

SCHEDULE 6. – METALS AND METAL PRODUCTS

Schedule 6 headnotes:

\*    \*    \*    \*    \*    \*    \*

2. For the purposes of the tariff schedules, unless the context requires otherwise—

\*    \*    \*    \*    \*    \*    \*

(b) the term "base metal" embraces \* \* \* zinc, \* \* \* and base-metal alloys;

(c) the term "metal" embraces precious metals, base metals, and their alloys; \* \* \*

\*    \*    \*    \*    \*    \*    \*

PART 1.—METAL-BEARING ORES AND OTHER METAL-BEARING MATERIALS

Part 1 headnotes:

1. This part covers metal-bearing ores, and certain other metal-bearing materials. This part does not cover—

(a) pigments or fertilizers (see schedule 4, parts 9B and 11, respectively), or chemical compounds (see schedule 4);

(b) slag cements, mineral wools, dolomite, cryolite, chiolite, or alunite, magnesite, or calcined bauxite (see schedule 5, part 1);

(c) precious and semiprecious stones (see schedule 5, part 1H); or

(d) metal waste and scrap, native metals separated from their gangues or matrices, or other metals essentially in a metallic state (see part 2 of this schedule).

2. For the purposes of this part—

(a) the term "metal-bearing ores" embraces only metalliferous minerals, whether crude or concentrated (by crushing, flotation, washing, or by other physical or mechanical separation processes which do not involve substantial chemical change), and roasted or sintered iron, lead, copper, and zinc concentrates, from which precious metals or base metals, as defined in headnote 2 of this schedule, are commercially obtained, including metals obtained directly in unalloyed form, in the form of alloys, or in the form of chemical compounds;

(b) the term "other metal-bearing materials of a type commonly used for the extraction of metal or as a basis for the manufacture of chemical compounds" embraces ash, slag, *dross* [emphasis added], scale, mattes, speiss, skimmings, flue dust, fumes, refinery slimes, residues, and all other materials (except metal-bearing ores, as above defined, and the dross or residuum from burnt pyrites) of a type from which precious metals or base metals, as defined in headnote 2 of this schedule, are commonly obtained (either as the result of a further processing of the materials as such, or as a result of the addition of the materials

as alloying materials to other materials being processed), including metals obtained directly in unalloyed form, in the form of alloys, or in the form of chemical compounds;

\*     \*     \*     \*     \*     \*     \*

Other metal-bearing materials of a type commonly used for the extraction of metal or as a basis for the manufacture of chemical compounds:

\*     \*     \*     \*     \*     \*     \*

603.30     Zinc dross and zinc skimmings_____     0.75¢ per lb.

\*     \*     \*     \*     \*     \*     \*

PART 2. – METALS, THEIR ALLOYS, AND THEIR BASIC SHAPES AND FORMS

Part 2 headnotes:

1. This part covers precious metals and base metals (including such metals when they are chemically pure), their alloys, and their so-called basic shapes and forms, and, in addition, covers metal waste and scrap. \* \* \* This part does not include—

\*     \*     \*     \*     \*     \*     \*

(iv) other articles specially provided for elsewhere in the tariff schedules, or parts of articles.

2. Alloys.—(a) For the purposes of the tariff schedules, alloys are defined and classifiable as hereinafter set forth. Alloys are metallic substances consisting of two or more metals, or of one or more metals and one or more non-metals, intimately united, usually by having been fused together and which may or may not have been dissolved in each other when molten; they include sintered mixtures of metal powders and heterogeneous intimate mixtures obtained by fusion, but do not include substances in which the total weight of the metals does not equal or exceed the total weight of the non-metal components.

\*     \*     \*     \*     \*     \*     \*

(d) in the tariff schedules, unless the context requires otherwise, a provision for a specific metal includes that metal and its alloys.

3. For the purposes of this part, unless the context requires otherwise—

(a) the term "unwrought" refers to metal, whether or not refined, in the form of ingots, blocks, lumps, billets, cakes, slabs, pigs, cathodes, anodes, briquettes, cubes, sticks, grains, sponge, pellets, shot, and similar primary forms, but does not cover rolled, forged, drawn, or extruded products, tubular products, or cast or sintered forms which have been machined or processed otherwise than by simple trimming, scalping, or descaling;

(b) the term "waste and scrap" refers to materials and articles of metal which are second-hand or waste or refuse, or are obsolete, defective or damaged, and which are fit only for the recovery of the metal content or for use in the manufacture of chemicals, and does not include metal in unwrought form or metal-bearing materials provided for in part 1 of this schedule;

(c) the term "wrought", as applied to metal products other than wrought iron, refers to products which have been rolled, forged, drawn, or extruded, and also refers to cast or sintered products which have been machined or processed otherwise than by simple trimming, scalping, or descaling;

\*     \*     \*     \*     \*     \*     \*

SUBPART H. – ZINC

Subpart H headnotes:

1. This subpart covers zinc, its alloys, and their basic shapes and forms, and also includes zinc waste and scrap.

2. Alloys of zinc: For the purposes of the tariff schedules, alloys of zinc are metals in which zinc predominates by weight over each of the other metal components, and which contain one or more of the following elements in the quantity by weight, respectively indicated:

over 1.8 percent of any one or more of the metals lead, cadmium, and iron, or
over 0.5 percent of aluminum, or
over 1.0 percent of copper, or
over 0.08 percent of titanium, or
over 0.1 percent of any other metallic element.

In the absence of context which requires otherwise, the term "zinc", wherever used in the tariff schedules, includes alloys of zinc.

\*     \*     \*     \*     \*     \*     \*

Unwrought zinc:

| | | |
|---|---|---|
| 626.02 | Other than alloys of zinc_____ | \* \* \* |
| 626.04 | Alloys of zinc_____ | 19% ad val. |

In open court, on the day of trial, counsel stipulated that in the imported zinc dross "zinc predominates by weight over each of the other metal components of the material" and that it contains one or more of the elements in the quantity by weight specified for alloys of zinc in subpart H, headnote 2, *supra*. The customs laboratory report (attached to the official papers in evidence) states that the imported zinc dross, sent to the laboratory for information as to its "[i]dentity, % of components, if essentially in a metallic state", is "dull, gray irregular pieces of congealed metal, contains 95.1% zinc, 0.6% lead \* \* \* the balance principally iron" and "is essentially metallic". Plaintiff's samples assayed 94.95% zinc; 1.34% lead; 3.32% iron, and .12% aluminum (exhibit 7).

Defendant does not controvert the fact that what plaintiff imported in this case is zinc dross. The record [2] clearly establishes that

---

[2] The record consists of testimony from four witnesses, three for plaintiff and one for defendant; seven exhibits and the official papers.

it is. Photographs of zinc dross show it in the form of large oversize chunks imbedded with extraneous material (exhibit 1) ; in the form of slabs (exhibits 2, 3, 4), and large pieces contained in barrels (exhibit 5). The samples, stated to be physically representative of the imported zinc dross (collective exhibit 6), came from slabs like those pictured in exhibit 4.

Zinc dross, according to the record, is a natural by-product of galvanizing steel or iron with a zinc coating to protect the iron or steel. When the iron or steel is submerged in a zinc spelter bath, the chemical reaction of the iron and zinc precipitates out as a drossy material. The drossy material is removed from the bath by a spoon with holes in it, or "any other means that the solid material, dross, can be removed from the molten zinc bath; and then these are simply dumped into containers, usually with holes in the bottom, to let the entrapped zinc alloy run out so it can be returned to the spelter bath, leaving only the refuse dross in the containers." The containers might be small slab ingots, or large ingots, or just old barrels. Zinc dross typically assays as reported in the customs laboratory report and exhibit 7, *supra.*

Plaintiff used the imported zinc dross to extract the zinc in the form of zinc dust. The process is described as one where the zinc dross is put into a retort, the zinc is fractionally distilled off into a big box called a condenser and the vapors in the condenser condense into a powder, called zinc dust.

The briefs filed on both sides indicate that the root problem engaging classification of this imported zinc dross is schedule 6, part 1, headnote 1, *supra.* For that reason we best repeat it as follows:

> 1. This part covers metal-bearing ores and certain other metal-bearing materials. This part does not cover—
> (a) pigments or fertilizers (see schedule 4, parts 9B and 11, respectively), or chemical compounds (see schedule 4) ;
> (b) slag cements, mineral wools, dolomite, cryolite, chiolite, or alunite, magnesite, or calcined bauxite (see schedule 5, part 1) ;
> (c) precious and semiprecious stones (see schedule 5, part 1H) ; or
> (d) metal waste and scrap, native metals separated from their gangues or matrices, or other metals essentially in a metallic state (see part 2 of this schedule).

Counsel have stipulated that in the context of the above headnote, the imported zinc dross is not any of the materials proscribed in 1 (a), (b), or (c). Also, that it is not metal waste or scrap, or native metals separated from their gangues or matrices proscribed by 1(d). Defendant's basic position is that assuming customs wrongly classified the zinc dross as unwrought alloys of zinc, the imported zinc dross is nevertheless a metal essentially in a metallic state excluded from schedule 6, part 1, under headnote 1(d), *supra.* The witnesses expressed

differences of opinion, and their testimony is conflicting as to whether the imported zinc dross consists of metals "essentially in a metalic state." We observe, however, that the conflict and differences, expressed in terms of whether the zinc dross was in a usable form characteristic of metal, had good thermo conductivity, its reflective properties or metallic shine, and its ductility, are not valid to consideration of whether zinc dross consists of "metals essentially in a metallic state" for tariff purposes. *United States* v. *Wells, Fargo & Co.*, 1 Ct. Cust. Appls. 158, T.D. 31211 (1911).

Defendant's argument implies that *all* metals essentially in a metallic state are not covered by part 1 of schedule 6. Plaintiff, *inter alia*, contends that zinc dross is *eo nomine* provided for in TSUS item 603.30 (defendant admits as much); that the headnote 1(d) reference to "other metals essentially in a metallic state" (parenthetically tied to the metals in part 2 of schedule 6) does not refer to metal-bearing materials, i.e., zinc dross, essentially in a metallic state, and that part 2 headnote 1(iv), *supra*, specifically states that part 2 does not include "other articles specially provided for elsewhere in the tariff schedules". Upon examination of the TSUS legislative history of schedule 6, parts 1 and 2, and the background which colors that history, we agree with plaintiff and sustain the protest.

Parts 1 and 2 of schedule 6, for the most part, are a distillation of the various provisions for metals and metal products in schedules 2, 3, and 16 of the Tariff Act of 1930.[3] The dispute in this case notwithstanding, it was believed that part 1 of schedule 6 set forth clearly and unambiguously, in an orderly systematic arrangement, the provisions for metal-bearing ores and certain metal-bearing materials distilled from schedules 3 and 16 of the Tariff Act of 1930 as to *reflect existing customs practices*.[4] The customs treatment of zinc dross, both administratively and judicially, prior to TSUS, is significant and persuasive to the result we reach in this case.

As early as the Tariff Act of 1913 dross containing lead was held dutiable as a metal unwrought under paragraph 154, rather than dutiable as lead in all other forms under paragraph 153. *Redden & Martin* v. *United States*, 38 Treas. Dec. 59, T.D. 38251 (1920). Similarly, under the 1913 Act, copper dross was held dutiable under paragraph 154. *Samuel Seiger* v. *United States*, 39 Treas. Dec. 243, T.D. 38687 (1921).

In the Summary of Tariff Information (1929), a report on the Tariff Act of 1922 incident to passage of the 1930 Tariff Act, Congress was advised that articles entered free of duty under the tariff description "metallic mineral substances" and "metals unwrought"

[3] Tariff Classification Study, Schedule 6, pages 11, 13, 83.
[4] Tariff Classification Study, Schedule 6, page 13.

(paragraph 1562 of the 1922 Tariff Act), included zinc dross.[5] In the 1930 Tariff Act, paragraph 1562 was renumbered free entry paragraph 1664, the language was significantly changed, and zinc dross was made an *eo nomine* dutiable classification in the following context:

> Par. 394. Zinc in blocks, pigs, or slabs, and zinc dust * * * ; in sheets * * * ; in sheets coated or plated with nickel or other metal (except gold, silver, or platinum), or solutions * * *; old and worn-out zinc, fit only to be remanufactured, *zinc dross*, and zinc skimmings * * *.[6] [Emphasis added.]

> Par. 1664. Metallic mineral substances in a crude state, such as *drosses*, skimmings, residues, brass foundry ash, and flue dust, not specially provided for.[7] [Emphasis added.]

Discussing the change in language in paragraph 1664, this court in *Alpha Lux Co., Inc.* v. *United States*, 2 Cust. Ct. 6, C.D. 75 (1939),[8] said:

> Concisely stated, the statute has been altered by the elimination of the provision for unwrought metals and by the addition of "drosses, skimmings, residues, brass foundry ash, and flue dust," these specific designations being preceded by the explanatory phrase "such as." A purist might find ground for criticism in the language which Congress selected to clothe its thought. Drosses, skimmings, and brass foundary ash cannot, with strict accuracy, be said to be metallic mineral substances in a crude state. They are, rather, metal resultants or residues from a process that was applied to a material which was itself a crude metallic mineral substance. However, that is not of decisive importance. The intent of Congress is plain. The abolition of the provision for unwrought metals would have made dutiable a number of drosses, skimmings, and other similar residues that had been held free of duty under the provision for unwrought metals. To insure their continued admission free of duty Congress inserted these *eo nomine* designations in the paragraph. Flue dust has been held dutiable as a nonenumerated manufactured article in the case of *American Smelting & Refining Co.* v. *United States*, 12 Ct. Cust. Appls. 212, T.D. 40226. This decision was made reluctantly, as intimated by Presiding Judge Martin, inasmuch as it was the raw material, so to speak, from which a certain finished product, i.e., arsenious acid, was made; whereas the finished arsenious acid was on the free list.

Well along the life of the Tariff Act of 1930, in the Summaries of Tariff Information (1948), Congress was advised that:

> * * * Zinc dross is the sludge recovered from galvanizing pots, and skimmings are the impurities removed from the surface of the

---

[5] Summary of Tariff Information (1929), page 2310.

[6] 19 U.S.C.A., section 1201.

[7] 19 U.S.C.A., section 1201.

[8] The court of appeals agreed with the discussion, *Alpha Lux Co., Inc.* v. *United States*, 27 CCPA 162, 164, C.A.D. 79 (1939).

molten zinc during galvanizing operations. *Secondary* zinc metal is recovered by remelting and refining or by *redistilling* scrap, dross, and skimmings. Dross and skimmings are also used directly in the manufacture of pigments and zinc dust. [Volume 3, Part 5, page 172, italics supplied.]

The above background of the treatment of drosses generally, and zinc dross in particular, indicates that for tariff purposes dross, when not specially provided for, has been treated as an unwrought metal; that zinc dross has been *eo nomine* treated as a material different from zinc material in the form of blocks, pigs, slabs, and zinc dust (some of the unwrought forms defined in schedule 6, part 2, *supra*) ; and that zinc dross is used to recover secondary zinc metal as opposed to primary zinc metal.

Looking now at what was done with paragraph 394 of the 1930 Tariff Act, in the orderly systematic arrangement of TSUS, we find that the tariff items in TSUS for dross metal material and unwrought forms of metal material unambiguously reflect the then existing customs classification practices outlined above with respect to dross generally, and zinc dross in particular.

Zinc dross in paragraph 394, a metallic substance used to recover so-called secondary zinc metal was arranged in schedule 6, part 1, the classification part for metal-bearing ores and certain other metal-bearing materials. The other zinc products in paragraph 394, blocks, pigs, sheets, etc., and worn-out zinc, were arranged in schedule 6, part 2, classifying, *inter alia*, so-called basic shapes and forms of wrought, unwrought, and similar primary forms of base metal, and also waste and scrap. Headnotes in parts 1 and 2 were used to define certain classification terms and to clarify the relationship between the metal-bearing materials in schedule 6, part 1, and the unwrought forms of metal-bearing materials provided for in schedule 6, part 2.[9] Part 1 headnote states that it covers metal-bearing ores and only certain other metal-bearing materials not including, *inter alia*, metal waste and scrap, native metals separated from their gangues or matrices, or other metals essentially in a metallic state, parenthetically identified with schedule 6, part 2. That the phrase "other metals essentially in a metallic state" was intended to exclude from schedule 6, part 1, only those metal-bearing materials essentially in a metallic state provided for in schedule 6, part 2, and not those certain other metal-bearing materials essentially in a metallic state provided for as such in schedule 6, part 1, is set out in the explanatory notes to TSUS as follows:

Headnote 2(a) defines the term "metal-bearing ores" and headnote 2(b) the term "other metal-bearing materials of a type com-

---

[9] See definition of metal-bearing materials in section 312(f) of the Tariff Act of 1930, as amended to correlate with TSUS, 19 U.S.C.A., section 1312(f) (Bonded smelting and refining warehouses).

monly used for the extraction of metal or as a basis for the manufacture of chemical compounds". It is important to note that these terms, taken together, embrace all the products classifiable in part 1; that although the term "metal-bearing ores" by definition (except as noted) does not embrace materials subjected to metal separation processes which involve substantial chemical change, the broader definition of the other term in headnote 2(b) would embrace such materials; and that, among other things mentioned in headnote 1 to this part, these terms do not embrace chemical compounds, or metal waste and scrap, native metals separated from their gangues or matrices, or other metals essentially in a metallic state provided for in part 2 of this schedule.[10]

To assure, even beyond the headnote definition of metal-bearing materials, that zinc dross of a type commonly used for the extraction of metal should not be classified as unwrought zinc in schedule 6, part 2, subpart H, zinc dross was *eo nomine* provided for in TSUS item 603.30, and headnote 1(iv) inserted in schedule 6, part 2 to state that part 2 does not include articles specially provided for elsewhere in the tariff schedules.

Defendant acknowledges the validity of the established judicial rule that an *eo nomine* provision for an article, without limitation or a showing that Congress intended the contrary, or that there is a judicial decision or administrative practice to the contrary, includes all forms of the article. *Nootka Packing Co. et al.* v. *United States*, 22 CCPA 464, T.D. 47464 (1935). Consistent with that rule, defendant takes the position that headnote 1(d), excluding from schedule 6, part 1, "other metals essentially in a metallic state", limits the *eo nomine* provision for zinc dross to that which is not essentially in a metallic state, citing *Amalgamated Sugar Company* v. *United States*, 60 Cust. Ct. 268, C.D. 3361, 281 F.Supp. 373 (1968). The headnote discussed in *Amalgamated* is, however, so clearly definitive of an intent to preserve and classify in one subpart of TSUS the articles described therein and also described in another part of TSUS, that it strengthens our view that the parenthetical reference to part 2 in headnote 1(d) of part 1, with respect to "metal waste and scrap, native metals separated from their gangues or matrices, or other metals essentially in a metallic state", was intended to clarify the relationship between the metal materials in parts 1 and 2 of schedule 6 rather than to preserve classification in part 2 of metals essentially in a metallic state described in part 1.[11]

Zinc dross is specially provided for *eo nomine* in TSUS, the same as it was in the 1930 Tariff Act. The protest claim under TSUS item 603.30 is, therefore, sustained.

Judgment will be entered accordingly.

---

[10] Tariff Classification Study, Schedule 6, pages 16, 17.

[11] See also, confirming commentary in Brussels Nomenclature (which exerted the greatest influence on the arrangement of TSUS, Tariff Classification Study, Submitting Report, page 8), under heading 26.03.